Filed 7/10/15  P. v. Gonzales CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F067098 |
| Plaintiff and Respondent, | (Super. Ct. No. F11904356) |
| v. | |
| SHAWN PATRICK GONZALES, | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Edward Sarkisian, Jr., Judge.

Linda M. Leavitt, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Chung Mi Choi, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Following jury trial, defendant Shawn Patrick Gonzales was convicted of a lewd and lascivious act upon a child (Pen. Code, § 288, subd. (a)).  On appeal, defendant contends the trial court abused its discretion pursuant to Evidence Code section 352 by

admitting evidence of his prior uncharged sexual offenses to prove criminal disposition under Evidence Code section 1108, in violation of his right to due process of law. Further, defendant maintains the trial court erred in imposing the aggravated term of eight years in prison. We affirm the judgment.

## BRIEF FACTUAL BACKGROUND[1]

On July 19, 2011, 11-year-old Jacob, his younger sister, and his mother were staying with Barbara P. temporarily. Jacob thought of Barbara P. as a grandmother figure because for a period of time his mother dated one of Barbara P.'s sons, Anthony. However, prior to that date, Jacob had never met Barbara P.'s son Shawn, the defendant.

That evening, before going to sleep in Anthony's bedroom, Jacob was lying on the bed watching a movie. Defendant came into the room, closed and locked the door, and asked Jacob if he could lie down. Defendant then lay down right behind Jacob, on his right side. He kissed Jacob on the back of the neck, above the collar of his shirt. While doing so, defendant told Jacob, "'God sends me little boys.'" Defendant also told Jacob he was a "'boy lover.'" Jacob was scared. Defendant put his arms around Jacob, who "couldn't really move." He held Jacob's shoulders and chest. Defendant tried to touch Jacob's "balls," but Jacob didn't let him.

Thereafter, Jacob grabbed his blanket and pillow and ran to the door. He had to unlock or unlatch the door. Jacob ran into the room his mother and sister were sharing with Barbara P. He was shocked because he thought what happened was "weird." He was upset. His mother asked him questions and learned what had happened. Barbara P. called the police.

Jacob did not recall telling a female interviewer that he could feel defendant's erect penis against his "butt cheek and … back," but he told the truth during that interview given after the incident. Jacob remembered things better during the interview;

---

[1]Additional facts are referenced in the Discussion as necessary to the arguments asserted on appeal.

he tries not to think about this incident now. He did not remember telling a police officer or the interviewer that defendant tried to reach inside his pants.

Specifically, two days after the incident, Jacob met with forensic interviewer Caroline Dower. During the interview, Jacob indicated defendant had lain next to him and began to touch him. Defendant grabbed Jacob's shoulders and pulled him closer, kissed his neck, rubbed his hair, and told Jacob he was a "'boy lover'" and that "'God sends [him] little boys to play with.'" He was rubbing Jacob "everywhere." Defendant put his hand inside Jacob's gym shorts and put that hand on Jacob's thigh and "groin area." Jacob indicated defendant's hand was inside his underwear and that's when he ran for the door. Jacob indicated defendant's hand "kind of touched [his] balls." At that point, he could feel defendant's erection on part of his lower back and buttocks. Jacob was afraid.

## DISCUSSION

### 1. Evidence Code Section 1108

Defendant argues the court violated his due process right to a fair trial by admitting testimony regarding uncharged sex offenses under Evidence Code section 1108. Specifically, he asserts the court abused its discretion by permitting the testimony of Michael G. and Christopher F. because the uncharged acts were remote, unreliable, dissimilar, and more prejudicial than probative. We conclude the court acted within its discretion in admitting this testimony.

#### A. Applicable Law

With certain exceptions, Evidence Code section 1101 provides that "evidence of a person's character or a trait of his or her character … is inadmissible when offered to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).) Section 1108 establishes one of the exceptions. It states: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).)

Evidence Code section 1108 was enacted in 1995 because the "Legislature …
determined that the policy considerations favoring the exclusion of evidence of
uncharged sexual offenses are outweighed in criminal sexual offense cases by the policy
considerations favoring the admission of such evidence.  The Legislature … determined
the need for this evidence is 'critical' given the serious and secretive nature of sex crimes
and the often resulting credibility contest at trial.  [Citation.]"  (*People v. Fitch* (1997) 55
Cal.App.4th 172, 181–182, fn. omitted.)  Because "'the willingness to commit a sexual
offense is not common to most individuals,'" the Legislature concluded that "'evidence
of … prior sexual offenses is particularly probative and necessary for determining the
credibility of the witness.'  [Citation.]"  (*People v. Soto* (1998) 64 Cal.App.4th 966, 983.)

Our Supreme Court has held that evidence admitted in conformity with Evidence
Code section 1108 does not violate a defendant's due process rights.  (*People v. Falsetta*
(1999) 21 Cal.4th 903, 915 (*Falsetta*).)[2]

As Evidence Code section 1108 provides, propensity evidence in the form of prior
sex offenses is admissible only if it is not unduly prejudicial under section 352.  Section
352 provides a trial court the discretion to exclude evidence the probative value of which
is substantially outweighed by its likely prejudicial effect.  Explaining the application of
section 352 in the context of evidence deemed admissible by section 1108, the Supreme
Court in *Falsetta* stated:

> "Rather than admit or exclude every sex offense a defendant commits, trial
> judges must consider such factors as its nature, relevance, and possible
> remoteness, the degree of certainty of its commission and the likelihood of
> confusing, misleading, or distracting the jurors from their main inquiry, its
> similarity to the charged offense, its likely prejudicial impact on the jurors,
> the burden on the defendant in defending against the uncharged offense,
> and the availability of less prejudicial alternatives to its outright admission,
> such as admitting some but not all of the defendant's other sex offenses, or

---

[2]Defendant recognizes *Falsetta* forecloses his claim that the statute violates due process
on its face, but asserts the argument to preserve it for later federal review.  We are bound by the
Supreme Court's decision.  (*Auto Equity Sales*, *Inc. v. Superior Court* (1962) 57 Cal.2d 450,
455.)  Therefore, we summarily reject defendant's due process contention.

4.

excluding irrelevant though inflammatory details surrounding the offense. [Citations.]" (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)

The Supreme Court went on to explain that convictions of the prior offenses and similarities between the charged and uncharged offenses were particularly good indicators of the probative value of prior crime evidence. (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 717.)

**B.** **The Trial Court's Preliminary Statements and Its Ruling**

During the hearing on the motions in limine, the court began by making the following preliminary comments concerning the Evidence Code section 1108 issue:

> "THE COURT: … And the Court yesterday evening and this morning reviewed the People's motions in limine and before taking the bench likewise reviewed defendant's response and motions in limine. And before we begin there are some thoughts and observations that I have that perhaps we could decide when and how to address. [¶] … [¶]

> "… I will state that in going through the file and motions and the 1108 issues we'll be getting into and all of the individuals that are named and dates that are referenced this appears to be a very, very complex factual situation or case in terms of the numerous potential witnesses, their relation to each other, the dates that are referenced, and all of what is going to be addressed in limine. And I will state parenthetically that I'm satisfied that we are proceeding very carefully and cautiously relating to all these issues rather than having the jury panel brought in immediately and launch into the voir dire that should follow a very careful hearing relating to what are very complex questions the Court is called upon to decide in limine."

After a brief continuance, argument was heard by the court concerning this evidence on April 4, 2013. Following the arguments proffered by the People and the defense, the court observed:

> "Very well, then I think we've completely in terms of argument addressed the potential 1108 witnesses. And the Court will need to reflect and review your arguments and make a ruling at a later point after consideration of your respective arguments."

The trial court indicated it would make its ruling the following Tuesday. On that date, the court ruled as follows:

"[THE COURT]: Now, moving on to the issues relating to 1108 of the Evidence Code regarding Bernadette J., Michael G., Christopher F. and Aimee G. Again, both parties have made excellent and persuasive arguments regarding this very difficult issue pertaining to Evidence Code section 1108. The record should be made clear that the Court recognizes and will measure the admissibility of these uncharged sexual offenses in the context of Evidence Code Section 353—352. Let me repeat that section again, 352, which the Court carefully reviewed and went over on April the 3rd, last week. *People versus Falsetta*, … decided by the California Supreme Court in 1999, at 21 Cal.4th 903, pages 916 to 917, holds that this Court, i.e., the trial court retains the power to exclude evidence that is cumulative, consumes an undue amount of time, or is unduly prejudicial when compared to its probative value. And, of course, both Counsel have argued those factors in their respective arguments relating to these four witnesses or potential four witnesses.

"In other words, as noted in *People versus Branch*, again, decided in 2001, 91 Cal.App.4th 274, at page 282, discussing *People versus Harris*, decided in 1998, at 60 Cal.App.4th 727, pages 737 to 741, the probative value of the evidence must be balanced against four factors:

"One, the inflammatory nature of the uncharged conduct.

"Two, a possibility of confusion of the issues.

"Three, remoteness in time of the uncharged offenses.

"And, four, the amount of time involved in introducing and refuting the evidence of uncharged offenses.

"With this measure in mind, and in consideration of all these factors, the Court concludes that the uncharged offenses regarding Michael G. and Christopher F. be allowed; and that the uncharged sexual offenses of Bernadette J. and Aimee G. be excluded.

"In allowance of the uncharged offenses—the offense rather relating to Michael G., it is with this qualification, namely, that it relate to the acts with respect to him directly in 1982, and not his observations of sex with Aimee, or of hearing a tape of a child being raped. Again, that it relate to the matters directed to him only.

"In excluding the uncharged sexual offenses relating to Bernadette and Aimee, and allowance of the evidence regarding Michael and

6.

Christopher, the Court finds that the statement attributed to Defendant by Jacob, … 'I'm a boy lover,' … and, … 'God sends me to little boys,' close quote; those statements relative and probative to the young males who were ten years old, namely, Michael and Christopher being 6 to 7 years old. Recognizing that in this case Jacob was 11 on or about July 20, 2011. All boys being approximately of the same age range. Although these uncharged offenses were many years ago, as argued by Defense Counsel, a fact the Court weighed, they are nevertheless within the time frame upheld by the *Branch* case. They do not appear to be time consuming, nor inflammatory, nor will their admission confuse the issues.

"On the other hand, admission of the uncharged offenses regarding the young females would be inflammatory, and confuse the issues, particularly in light of the statement attributed to Defendant, … 'I am a boy lover,' … and, … 'God sends me to little boys,' ….

"This, therefore, will be the Court's in limine order and ruling regarding the 1108 motion. And will direct that the recordings and transcripts that reflects the matters that have been excluded be redacted accordingly.

"And to repeat, that the 1108 evidence relating to Michael be limited to acts allegedly committed upon him directly and not what he saw or heard Defendant do to others."

## C.    Analysis

Notably, the trial court did not admit every prior uncharged sex offense proffered by the prosecution. The People sought to present the testimony of four witnesses under Evidence Code section 1108. However, the court excluded two of the four, finding the uncharged acts involving Aimee G. and Bernadette J. would be "inflammatory, and [would] confuse the issues."

The Supreme Court has stated: "[W]hen ruling on a[n Evidence Code] section 352 motion, a trial court need not expressly weigh prejudice against probative value, or even expressly state it has done so. All that is required is that the record demonstrate the trial court understood and fulfilled its responsibilities under … section 352." (*People v. Williams* (1997) 16 Cal.4th 153, 213.) On this record, it is clear the court understood the analysis it was required to undertake under section 1108, weighing prejudice against probative value pursuant to section 352.

7.

Nevertheless, defendant maintains the testimony of Michael G. and Christopher F. should have been excluded because of dissimilarity and remoteness. We note the evidence of prior uncharged conduct against Michael and Christopher was relevant to defendant's propensity to engage in sexual behavior with younger, isolated, male victims. (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1099; *People v. Escudero* (2010) 183 Cal.App.4th 302, 309-310.)

At the hearing on the motions in limine, the People argued similarities existed between defendant's conduct with Michael G. and Jacob. Thirty years prior, when Michael G. was 10 years old, he moved into the home where defendant, his older half brother, was already living. On more than one occasion, defendant would masturbate in front of Michael, grab at Michael's buttocks, and tell Michael to "'Suck his dick.'" On one particular occasion, Michael wanted to go fishing but he was not permitted to go alone at his age so he asked defendant to take him. Defendant responded by pulling down his pants and telling Michael "'if you suck my dick, I'll take you.'" Michael refused. The People argued these attempted molestation acts by defendant against Michael were similar to the incident with Jacob because they, too, involved a younger male victim who was staying in defendant's home. Regarding defendant's conduct with Christopher F., the People argued there were similarities to the incident with Jacob. Again, Christopher was a younger male who was visiting defendant's home. More particularly, in the incident occurring many years ago, defendant took Christopher into his bedroom and locked the door. Defendant removed his own clothes and ordered Christopher to orally copulate him. Christopher refused. Defendant then directed Christopher to bend over. Defendant tried to penetrate Christopher's anus from behind, but he was interrupted by a knock on the door.

In sum, both Michael G. and Christopher F. were younger than defendant at the time of the uncharged acts. Defendant's focus on the fact he, too, was a juvenile during the relevant uncharged-act time periods, as distinguished from this crime, is misplaced. All three *victims* are similar as they are male, younger than defendant, and easily

8.

accessible to him. Jacob testified he was alone in the bedroom before defendant came in and locked the door behind him. Similarly, Christopher testified defendant attempted to sexually assault him after locking himself and Christopher in his bedroom. Additionally, defendant approached both Jacob and Christopher from behind during the sexual conduct he initiated.

We conclude sufficient similarities exist between the uncharged acts involving Michael G. and Christopher F. and the charged conduct involving Jacob. And similarities are a good indicator of probative value. (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)

"'[N]o specific time limits have been established for determining when an uncharged offense is so remote as to be inadmissible.' (*People v. Branch* (2001) 91 Cal.App.4th 274, 284.) And similar time periods have been approved in other cases. (See *People v. Ing* (1967) 65 Cal.2d 603, 612, questioned on other grounds in *People v. Tassell* (1984) 36 Cal.3d 77, 89 [15 years before charged offenses]; *People v. Branch*, *supra*, 91 Cal.App.4th at pp. 284–285 [more than 30 years]; *People v. Waples* (2000) 79 Cal.App.4th 1389, 1395 [18 to 25 years].)" (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1388–1389.) Remoteness is but one factor to be considered by the trial court.

The court did consider the fact the uncharged acts were nearly 30 years old. It expressly stated: "Although these uncharged offenses were many years ago, as argued by Defense Counsel, a fact the Court weighed, they are nevertheless within the time frame upheld by the *Branch* case."

We find no abuse of discretion here. The record affirmatively reflects the trial court carefully considered defendant's prior conduct, including its nature and similarity to the charged offenses and its remoteness in time. The court weighed prejudice against probative value, and excluded evidence it believed would be inflammatory or was not sufficiently probative because it was too dissimilar or remote. (See *People v. Dejourney* (2011) 192 Cal.App.4th 1091, 1105.) The court's decision in this regard fell well within "the bounds of reason, all of the circumstances being considered. [Citations.]" (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) Its decision was not "'arbitrary, whimsical, or

capricious as a matter of law. [Citation.]' [Citation.]" (*People v. Branch*, *supra*, 91 Cal.App.4th at p. 282.)

Defendant also argues the testimony was indefensible as a result of the remoteness of the uncharged acts involving Michael G. and Christopher F. However, the possibility that allegations of prior uncharged offenses are false does not necessarily mean evidence of those offenses is inadmissible under Evidence Code section 1108. Under *Falsetta*, the degree of certainty of a prior offense's commission is one factor that must be considered (*Falsetta*, *supra*, 21 Cal.4th at p. 917), not that the evidence must be excluded unless some quantum of certainty is attained. Here, it appears defendant was not charged because his conduct was never reported to law enforcement. Michael testified he told his grandparents about defendant's conduct but defendant denied the conduct and Michael's grandparents believed defendant. Defendant's conduct continued and it was never reported to the police. Christopher testified he only told his brother about the incident with defendant. Christopher also testified that years after the incident, he told his mother what defendant had done but she did not care. She did not call the police. Thus, while there were no charges asserted nor convictions obtained, the trial court clearly considered the degree of certainty issue.

Furthermore, although defendant asserts his counsel's failure to challenge the admission of the Evidence Code section 1108 evidence on constitutional due process grounds amounted to ineffective assistance of counsel, we cannot agree.

To prevail on an ineffective assistance of counsel claim, the defendant must establish two things: (1) counsel's performance fell below an objective standard of reasonableness, and (2) that prejudice occurred as a result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Hernandez* (2012) 53 Cal.4th 1095, 1105.) The *Strickland* court explained that prejudice is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington*, *supra*, at p. 694.) Further, the high court stated that "[a]

reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. (*Ibid*.)

Given the Supreme Court's holding in *Falsetta*—that the admission of evidence under Evidence Code section 1108 regarding a defendant's propensity to commit a sex act does not violate a defendant's right to due process of law (*Falsetta*, *supra*, 21 Cal.4th at pp. 910, 922)—it cannot be said defense counsel here performed below an objective standard of reasonableness when she did not challenge the admission of the uncharged evidence on due process grounds. Additionally, defense counsel's argument against the admission of the proffered evidence was successful. She persuaded the court to exclude two of the four witnesses the People sought to place on the stand. The court agreed with counsel that the uncharged act evidence from Bernadette J. and Aimee G. was more prejudicial than probative. Thus, in light of the foregoing, it was not unreasonable for defense counsel to fail to challenge admission of the section 1108 evidence involving Michael G. and Christopher F. on due process grounds. Notwithstanding, "[t]he decision whether to object to the admission of evidence is 'inherently tactical,' and a failure to object will rarely reflect deficient performance by counsel." (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1335.) Because defendant cannot establish counsel's performance fell below an objective standard of reasonableness, we need not address the prejudice prong.

Here, the trial court soundly exercised its discretion concerning the admissibility of the uncharged sexual offenses involving Michael G. and Christopher F. Its decision is not arbitrary, whimsical or capricious. "The 'determination as to whether the probative value of such evidence [of uncharged sexual offenses] is substantially outweighed by the possibility of … unfair prejudice or misleading the jury is "entrusted to the sound discretion of the trial judge who is [in] the best position to evaluate the evidence." [Citation.]'" (*People v. Hernandez* (2011) 200 Cal.App.4th 953, 966.) We thus conclude the trial court did not abuse its discretion in admitting evidence of defendant's prior uncharged sexual acts under Evidence Code section 1108.

11.

**2.      Aggravated Sentence Imposed**

Defendant complains the trial court erred when it imposed the aggravated term because it did not consider certain mitigating factors and relied too heavily upon other aggravating factors.

**A.      Sentencing Proceedings**

During the hearing on May 29, 2013, and prior to any argument, the court stated:

> "All right.  This was the date and time fixed for the hearing on the probation report, which the Court has read and reviewed consisting of 11 pages.  The Court has also read and reviewed the People's sentencing memorandum, consisting of 11 pages, together with the addendum filed this morning consisting of one page, and an attachment, namely, a letter from Aimee G[.]  And also has read and reviewed Defense Counsel's statement in mitigation consisting of four pages."

Shortly thereafter, the court's attention was directed to an additional document appended to the People's addendum of that same date; the court indicated it had overlooked the letter but would "take some time now" to read the letter.  Following the arguments of the People and defense counsel, and the statements offered by defendant and others, the court commented:

> "THE COURT:  Well, I know there's a lot of emotion and a lot of consideration by everyone that's involved in this case, those who have addressed the Court, together with Counsel who have argued their case.
>
> "And what I'm turning over, Counsel, recognizing … you have to be in Department 70 very shortly, and recognizing my jury is coming back, what I'm considering is instead of pronouncing judgment is to read the entire file again, consider everything that's been argued and stated, and proceed to the matter of judgment and sentence either tomorrow morning at 8:30, or Friday morning at 8:30.  But there's many comments and statements I would like to make that I think I need the opportunity to do.
>
> "So, Counsel, I'm proposing to trail sentencing and matter of judgment until tomorrow at 8:30.  [¶] … [¶]
>
> "[DEFENSE COUNSEL]:  Could we do Friday, considering my trial?
>
> "THE COURT:  Let me check with [the prosecutor].
>
> "[PROSECUTOR]:  That's fine, Your Honor.

"THE COURT: All right. Then I think under all the circumstances, and all of what I need to go through once again, and reconsider—like I said prior to taking the bench, I read and reviewed the probation report consisting of 11 pages, the sentencing memorandums, but there's a lot that needs to be stated and reflected upon before the Court proceeds to pronouncement of judgment."

On May 31, 2013, when sentencing proceedings resumed, and after the court considered a motion of defendant's, the following colloquy occurred:

"THE COURT: [W]e had a lengthy hearing on Wednesday, May the 29th, and I will incorporate by reference the entire proceedings of that date as if it were fully set forth at this time. Again, the record of the proceedings of May the 29th will be incorporated by reference. [¶] … [¶]

"… And, again, for the record, the Court has read the probation report consisting of 11 pages as previously stated. The District Attorney's sentencing memorandum of 11 pages, together with a supplemental memorandum. Also, the Defense Counsel's statement of mitigation. And has also considered all statements, comments, and argument made on May the 29th, the proceedings of which, as I stated, are incorporated today.

"And, of course, on May the 29th, the Court trailed the matter to reflect and consider further the matter of judgment and sentence. And on May the 29th both parties made compelling and understandable arguments and recommended sentences.

"Prior to the hearing on the 29th, prior to entering that hearing, the Court also considered the appropriateness of a diagnostic report and recommendation pursuant to Penal Code Section 1203.3—again, 1203.03. But upon further consideration, concluded that would not be an appropriate course of action to take for the reasons hereinafter stated.

"Next, the Court will recite some thoughts about this case itself, without being exhaustive of all thoughts that give rise to this case.

"And I will note in reflecting on this trial and this case that the jury did not come up with a quick verdict. And the jury asked questions, many questions, and came in the following day before reaching a verdict.

"Regarding the uncharged offenses, I think it should be borne in mind that based on the strenuous motion made by Defense Counsel, the Court concluded, and I think it was a correct decision to make, the Court did exclude the testimony of the prior matters relating to the female who the People wished to call, several females. And the Court in the 1108

13.

motion did allow the testimony of two young boys. And during the trial it was clear to the Court that the impact it had on them, both Michael and Christopher, both of whom came into this court from long distances. Michael, as I recall, coming from the state of Oregon. Now, the Defendant was never charged for those offenses. But, in any event, this case will perhaps give them some measure of closure after all of these years. This is the first time they could officially testify about their experiences.

"Relating to Jacob, the victim in this case, it's obvious the impact this case has had on him. And as has been noted several times, his grade point average went from a 3.8 down to 1.3 And in a sense by having to testify again—rather by having to testify in this case in a sense he was victimized again. Jacob appeared to be a smart, intelligent young man. And it's the Court's hope that this experience does not lead to or cause any serious difficulties in his future. His mother's statement the day before yesterday was very compelling. And I hope that he could turn around again and go back to the boy that he was before this case occurred. It looks like Michael and Christopher have both adjusted, albeit with the marijuana matter now in Michael's life. But the Court has a sense that they are and will be productive citizens, and the Court's confident that Jacob will be as well.

"And it was sad to witness the impact all of this case has had, even on the Defendant's own mother …. This case at one point lead to a body attachment being issued for the Defendant's mother, which this Court ordered recalled after her testimony was given. She mentioned the medications and physical and mental stress she suffers from. And to her credit, she, Defendant's mother, called 911, according to the testimony. And her testimony reflected the statement to her, Defendant's statement to her, that he, namely, the Defendant, fondled Jacob. And it's unfortunate that she was placed in this difficult situation to testify against her own son, but she stepped up to the plate consistent with her calling 911.

"And it is obvious to the Court that the Defendant does suffer from mental health issues. But the Court is satisfied that he knew precisely what he was doing on July 20th, 2011. And all of the testimony, both prosecution and defense, appropriately reflects the jury's verdict of his guilt of Penal Code Section 288, subdivision (a), as charged.

"And, again, in light of all that's been stated and argued and so on, it must be remembered that a jury, 12 persons, unanimously returned their verdict based on the evidence they heard and were satisfied beyond a reasonable doubt of Defendant's guilt.

14.

"Accordingly, for the offense of Penal Code Section 288, subdivision (a), the Defendant is statutorily ineligible for a grant of probation since a 288.1 report has not been ordered, nor will the provisions of 1203.067 be ordered.

"The Court in weighing the factors in mitigation and aggravation find that the aggravating factors preponderate.

"The Court recognizes that Defendant has no prior criminal record, however, in this case Defendant took advantage of a position of trust reflected not only in this case relating to Jacob, but the same with Christopher and Michael, both of whom testified and were cross-examined. Aimee and Erica's statements were very compelling in terms of the trauma inflicted upon them.

"And in light of all of these instances, Defendant has demonstrated a total lack of any remorse whatsoever. And that lack of remorse is a factor that the Court gives great weight to.

"Absent the prior acts on Michael, Christopher, Aimee and Erica, Defense Counsel's argument for the mid-term would be persuasive. But the violation of a position of trust on Jacob, coupled with the other acts, compels and directs that the aggravated term of eight years be fixed.

"Again, to repeat, Defendant's total lack of remorse for any or all of his conduct that this Court has been apprised of.

"And, again, Defendant will be imprisoned for the aggravated term of eight years."

## B.     Law and Analysis

Sentencing courts have wide discretion in weighing aggravating and mitigating factors and may balance them against each other in qualitative as well as quantitative terms. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.) A trial court may base an upper term sentence upon any aggravating circumstance the court deems significant. (*People v. Sandoval* (2007) 41 Cal.4th 825, 848.) Absent a showing the sentence is irrational or arbitrary, it is presumed the trial court acted to achieve legitimate sentencing objectives. (*People v. Superior Court* (*Du*) (1992) 5 Cal.App.4th 822, 831–832.)

Aggravating factors are factors that make a crime "distinctively worse than the ordinary." (*People v. Moreno* (1982) 128 Cal.App.3d 103, 110.) Thus, facts that are

more egregious than whatever is necessary to establish the offense may properly establish an aggravating factor or factors. (See *People v. Miranda* (1987) 196 Cal.App.3d 1000, 1003.) "Only a single aggravating factor is required to impose the upper term." (*People v. Osband* (1996) 13 Cal.4th 622, 728.)

Defendant complains the trial court erroneously relied upon the concept defendant violated a position of trust[3] because there was no evidence of such a position. We do not agree. The record contains evidence defendant "asked [Jacob] a lot of questions" about Bible camp prior to the incident. Later that evening, defendant approached Jacob, who was alone in a bedroom. He locked the door, lay down next to Jacob on a twin-sized mattress, and told Jacob "'God sends me little boys,'" while kissing and touching him. Further, defendant was an adult living in the home where Jacob and his family were temporary guests, and Jacob thought of defendant's mother as a grandmother-figure. We find this evidence speaks directly to the issue of defendant occupying a position of trust or confidence as it related to the incident with Jacob.

The court also gave "great weight" to defendant's lack of remorse. Significantly, defendant does not challenge the court's finding in this regard however. Hence, imposition of the upper term was not error because a single aggravating factor is all that is required to impose an upper term. (*People v. Osband*, *supra*, 13 Cal.4th at p. 728.)

Next, defendant maintains the trial court erred by failing to consider the mitigating factors of his schizophrenia and lack of a criminal record. This assertion is inaccurate.

California Rules of Court, rule 4.423(b)(2) provides that the fact a "defendant was suffering from a mental or physical condition that significantly reduced culpability for the crime" is a mitigating factor. And here, the court expressly stated: "it is obvious to the Court that the Defendant does suffer from mental health issues." Plainly then, the court considered defendant's mental health, a subject with which it was familiar given the competency issues that preceded the trial and by way of the testimony offered at trial by

---

[3]California Rules of Court, rule 4.421(a)(11): "The defendant took advantage of a position of trust or confidence to commit the offense."

16.

defense witness Howard Terrell, M.D. Moreover, as the court indicated, it had reviewed the probation report, as well as the sentencing memoranda prepared by the parties. Both addressed defendant's mental health. And although the trial court was not required to indicate its reason for rejecting this mitigating factor (*People v. Davis* (1980) 103 Cal.App.3d 270, 281, disapproved on other grounds in *People v. Sumstine* (1984) 36 Cal.3d 909, 921, fn. 8), it did so here: "But the Court is satisfied that [defendant] knew precisely what he was doing on July 20th, 2011." The court did not abuse its discretion by rejecting defendant's mental illness as a mitigating factor.

Further, despite defendant's complaint, the court did in fact consider his lack of criminal record: "The Court recognizes that Defendant has no prior criminal record …." Again, the court is not required to indicate its reason for rejecting a mitigating factor. (*People v. Davis*, *supra*, 103 Cal.App.3d at p. 281.) And it may balance those factors as it sees fit. (*People v. Avalos*, *supra*, 47 Cal.App.4th at p. 1582.)

Finally, we do not agree with defendant's characterization that the trial court "relied extensively" on the uncharged acts in imposing its sentence. It is clear from this record the court carefully considered a number of factors, not the least of which included the effect defendant's act had on Jacob.

In sum, the sentence imposed was neither irrational nor arbitrary. The trial court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed.

_____
PEÑA, J.

WE CONCUR:


_____
DETJEN, Acting P.J.


_____
FRANSON, J.

17.