Filed 7/20/16  P. v. Inestroza CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TERESA GUADALUPE INESTROZA,<br><br>    Defendant and Appellant. | E062988<br><br>(Super.Ct.No. RIF1304033)<br><br>O P I N I O N |

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Scott C. Taylor and Kristen Kinnaird Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.  INTRODUCTION

On December 12, 2014, a jury convicted defendant and appellant, Teresa Guadalupe Inestroza, of vehicular manslaughter with gross negligence (Pen. Code, § 192, subd. (c)(1), count 1), and sentenced her to 36 months of formal probation subject to a number of terms and conditions, including that she serve 365 days in county jail.

On this appeal, defendant argues that her conviction must be reversed because (1) defense counsel rendered ineffective assistance by failing to object to the admission of her statement that, at the time of the incident, she was driving with a suspended driver's license and without vehicle insurance, (2) the People misstated the "beyond a reasonable doubt" standard during closing argument, which "effectively reduced" their burden of proof, and (3) defense counsel rendered ineffective assistance by failing to object to the People's misstatement of what constitutes "beyond a reasonable doubt."  We conclude defense counsel did not render ineffective assistance and the People did not misstate the "beyond a reasonable doubt" standard.

## II.  PROCEDURAL HISTORY

On August 12, 2014, an information charged defendant with vehicular manslaughter with gross negligence for causing the death of Jeanette Meeker (Pen. Code, § 192, subd. (c)(1), count 1), misdemeanor driving with a suspended license (Veh. Code, § 14601.1, subd. (a), count 2), and driving without vehicle insurance, an infraction (Veh. Code, §§ 16020, subd. (a), 16021, count 3).  On December 8, 2014, the court granted

defendant's motion to bifurcate counts 2 and 3 from the current action, and defendant then pled guilty to counts 2 and 3.

## III.  BACKGROUND FACTS

A. *Prosecution Evidence*

Between 9:00 p.m. and 10:00 p.m. on December 29, 2012, John Buckley was in a Toyota Prius, driving in the right-hand lane and heading east on Central Avenue, passing Poly High School and driving towards a curve in the road where Central Avenue turns into Alessandro Boulevard.  His wife, Beverly Buckley, was in the front passenger seat, and Mrs. Buckley's 87-year-old mother, Jeanette Meeker, was seated in the rear passenger side seat.  They were all wearing their seatbelts.  Mr. Buckley testified that it was not raining at the time of the collision and he did not have his windshield wipers on.

As Mr. Buckley drove east on Central Avenue, and a few blocks after he drove past Poly High School, he saw, out of his peripheral vision, a car heading directly at his Toyota Prius.  Mrs. Buckley, whose eyes were closed, opened her eyes when she heard Mr. Buckley yell, "[o]h, my."  She saw two headlights and a white hood just as another car struck the Prius.  According to Mr. Buckley, the other car struck the Prius nearly "dead center," and the Prius's airbags deployed.

Both Mr. and Mrs. Buckley suffered injuries, were transported by ambulance to a nearby hospital, received treatment, and were released the following afternoon.  Jeanette Meeker, Mrs. Buckley's mother, died from blunt force injuries within seconds of the collision.

3

An interview between defendant and two Riverside Police Department detectives was recorded and played for the jury. In that interview, defendant told detectives that, at around 7:00 p.m. on December 29, 2012, she began driving home to Riverside in her silver 2005 Hyundai after finishing a 16-hour shift as a clerk at a Harbor Freight Tools warehouse in Moreno Valley. She stopped for approximately one hour to have a sandwich and coffee before continuing her drive home around 8:00 p.m.

To get home, defendant usually drove northwest on Alessandro Boulevard and turned on Arlington Avenue. Traffic was heavy on Arlington Avenue that evening, so she continued northwest on Alessandro Boulevard towards Central Avenue. Defendant told the detectives it was raining as she drove home that evening, and her windshield wipers were set to the middle setting. She also told detectives she was driving between 40 and 45 miles per hour when she drove on Alessandro Boulevard and passed Arlington Avenue. Approximately a block after driving past Arlington Avenue, she switched from the left lane to the right lane of Alessandro Boulevard. She told detectives that she "could barely see the curb [*sic*]," that there were no reflectors on the road, and that there were no signs warning her that the road was about to curve where Alessandro Boulevard turned into Central Avenue. Defendant acknowledged she did not have 20/20 vision, but had not worn glasses since high school, as her insurance did not cover the cost of glasses, and she "could still see . . . [and] read." She also admitted that, when she was previously licensed in Texas, her driver's license required her to wear glasses; however, when she obtained her California driver's license she was not asked to take an eye examination.

4

After she switched to the right lane, she felt the car going faster. She looked at the speedometer and learned the car was traveling at 50 miles per hour, even though she was no longer pressing the accelerator. She started to apply the brakes as she entered the curve where Alessandro Boulevard turned into Central Avenue, but the car skidded and she was unable to control it. As the car traveled downhill, it skidded from the right lane toward the center of the road, and it struck and jumped the center divider, ending up in oncoming traffic on Central Avenue, at the intersection of Central Avenue and Fairview Avenue. The car came to a stop at the intersection of Central Avenue and Fairview Avenue, and, "[p]robably about five seconds" later, the car was struck by another vehicle.

At trial, one of the detectives who interviewed defendant was asked whether, during the interview, defendant "express[ed] that she had—that her license was suspended," and whether defendant told him "that she did not have—at that time of the collision—valid insurance." He answered "[y]es" to both questions.

A mechanic for the Riverside Police Department performed an inspection of both vehicles after the incident. The mechanic testified he found nothing unusual or defective with the tires, brakes, or hoses of either defendant's Hyundai or the Buckleys' Prius.

Officer Gregory Matthews, a collision reconstruction officer for the Riverside Police Department, testified that, although the road was damp at the time he arrived at the collision scene, there was no standing water on the road. Based on his reconstruction investigation, he determined defendant's Hyundai was traveling around 58 miles per hour in a 40 miles per hour zone when it hit the center divider, and it was traveling 50 miles

per hour when it struck the Buckleys' Prius, which was traveling 24 miles per hour at the point of impact. As Officer Matthews drove up Alessandro Boulevard towards Central Avenue, he saw that there was a flashing speed board that alerted drivers if they were driving above the speed limit of 40 miles per hour, as well as a "curve ahead" sign. There were also yellow reflective Botts' dots on the road to alert motorists to the presence of the center divider, as well as to distinguish between the left and right lanes. Officer Matthews opined that the primary causal factors for the collision were defendant traveling at a speed unsafe for the conditions (Veh. Code, § 22350), creating an unsafe turning movement (Veh. Code, § 22107), and traveling over the center divider (Veh. Code, § 21651).

B. *Defense Evidence*

Defendant did not testify, but offered the testimony of Kevin Channer and Lora Cooke-Channer, who owned and lived at a home at the corner of Fairview Avenue and Central Avenue, near the scene of the collision. Both Mr. Channer and Mrs. Cooke-Channer recalled it was not raining when they went outside after they heard the accident between defendant's Hyundai and the Buckleys' Prius. Both Mr. Channer and Mrs. Cooke-Channer testified that, having lived at the home since 2000, they have personally witnessed or heard many accidents just outside their home. Mr. Channer described this particular stretch of road as "a more challenging road in terms of driving the speed limit on that with the curve and the elevation," and Mrs. Cooke-Channer testified that she

6

wished there was "a flashing light to mark the roadway to show people that it's a blind curve and that there's—there is a pitch in the road and it's dark."

Defendant's theory was that the accident was caused, not because of her driving, but because her car hydroplaned, and because the roadway was dangerous and prone to a collision. Defense counsel elicited testimony from Officer Matthews that "we can't show if the vehicle was hydroplaning one way or another." However, because he observed defendant's Hyundai had left friction marks on the roadway just before it struck the center divider, Officer Matthews believed the hydroplaning scenario was "impossible," as there is no friction between the tires of a hydroplaning car and the roadway; thus, he would not have expected to see friction marks on the roadway had defendant's car been hydroplaning immediately before it struck the Buckleys' Prius. Officer Matthews also did not believe that the engineering of the roadway was defective, or that it contributed to the collision, as "[t]he speed survey supports the speed limit for the roadway as designed if the person is traveling at or near the speed limit."

## IV. DISCUSSION

A. *Defense Counsel Did Not Render Ineffective Assistance By Not Objecting to the Admission of Evidence That Defendant Was Driving on a Suspended License and Without Insurance*

Defendant contends her defense counsel rendered ineffective assistance because he did not object to the admission of evidence that, at the time of the accident, defendant was driving with a suspended license and without insurance. Defendant asserts that such

7

evidence was irrelevant, and that, had defense counsel objected, it would have been excluded under Evidence Code section 352, as "its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

1. Background

(a) *Defendant's Guilty Plea to Counts 2 and 3*

On the first day of trial, and before jury selection, defense counsel told the trial court that defendant was leaning towards pleading guilty to the count 2 charge of misdemeanor driving with a suspended license (Veh. Code, § 14601.1, subd. (a)), as well as the count 3 charge of driving without vehicle insurance (Veh. Code, §§ 16020, subd. (a), 16021). Defense counsel stated that the guilty pleas would be "in the understanding that that will prevent those items from being mentioned during the course of the trial."

The prosecutor stated he did not agree to that condition, and the trial court advised defense counsel: "I don't know that I can prevent the [district attorney] from referring to it if [defendant] pleads guilty to [counts 2 and 3], because that's a public record. I don't know that I could preclude the district attorney or anyone else from referring to the fact that [defendant] was driving on a suspended or revoked license." The trial court also stated: "I understand your thinking here, [counsel], but if [defendant] pleads guilty, I don't believe there would be a legal basis for me to prevent the People from raising that in their case." The trial court went on to explain: "And if that was the reason you were seeking to have her plead guilty to those two counts, I'll leave that up to you, but if she

does plead guilty to them, I don't believe I can preclude [the People] from bringing that up."

The prosecutor recognized that "defendant's DMV record[1] is rather prejudicial," and he agreed that if she pled guilty to counts 2 and 3, he would "limit [his] evidence to her statements as to those counts."

Following a recess, defendant pled guilty to counts 2 and 3.

   (b) *The Instructions on Vehicular Manslaughter With Gross Negligence*

Defendant was charged in count 1 with vehicular manslaughter with gross negligence, which is defined as "driving a vehicle in the commission of an unlawful act, not amounting to a felony, and with gross negligence; or driving a vehicle in the commission of a lawful act which might produce death, in an unlawful manner, and with gross negligence." (Pen. Code, § 192, subd. (c)(1).) The trial court instructed the jury that gross negligence is "more than ordinary carelessness, inattention, or mistake in judgment. A person acts with gross negligence when: [¶] 1. He or she acts in a reckless way that creates a high risk of death or great bodily injury; [¶] AND [¶] 2. A reasonable person would have known that acting in that way would create such a risk. [¶] In other words, a person acts with gross negligence when the way he or she acts is so

---

[1] Nine months before the current accident, defendant was involved in an accident where she was cited for driving without a license and insurance. Approximately seven months before the current accident, defendant was issued a speeding ticket on the same street where the current accident occurred. She received another speeding citation after the current accident. According to the probation officer's report, between February 11, 2013 and March 12, 2014, defendant was convicted on four separate occasions for various Vehicle Code violations.

different from how an ordinarily careful person would act in the same situation that his or her act amounts to disregard for human life or indifference to the consequences of that act." (CALCRIM No. 592.) The trial court also instructed the jury that "[a] finding of gross or ordinary negligence is based upon an objective, reasonable person standard in the same or similar circumstances. That is, whether a reasonable person would have believed that his or her actions posed a risk. The defendant's own subjective, good faith belief is not the standard to be applied when determining whether she acted with gross or ordinary negligence."

(c) Closing Argument

As noted, at trial, one of the detectives who interviewed defendant on May 14, 2013, confirmed that defendant "express[ed] that she had—that her license was suspended," and that defendant told him "that she did not have—at that time of the collision—valid insurance." Defense counsel did not object to either question.

In closing argument, the prosecutor argued that defendant "had no privilege to be driving" and "had no lawful reason to be on the roadway" because "[i]t's uncontroverted, undisputed in this case that she was driving . . . on a suspended license and driving without insurance." The prosecutor also argued that a reasonable person would have driven lawfully, which "means with a valid driver's license and insurance," and he contended, "[h]ad the defendant done one lawful thing, that was, to abide by the law of not driving on a suspended license and would not drive without valid insurance, Miss

10

Meeker would have been alive." Defense counsel did not object to these references to defendant's suspended license and lack of insurance.

In his closing, defense counsel argued defendant "cannot be convicted simply because she drove while her license was suspended, nor can she be convicted simply because she drove without insurance." Though he acknowledged that the jurors may have "justifiable anger" that defendant did not have vehicle insurance and drove without a license, he reminded the jurors that "that can't be the crux of judging [defendant]," as the jurors must follow the law the judge instructed them to follow.

In rebuttal, the People again referred to defendant's suspended license and lack of insurance when the prosecutor stated: "She's driving on a suspended license and no insurance. Now, I'm not suggesting the fact that she's on the suspended license or that she's driving with no insurance in and of itself makes her negligent, but there is something very, very important with that fact . . . ." The prosecutor also argued that the jury could acquit defendant of vehicular manslaughter with gross negligence if the death was caused by "accident or misfortune," which required defendant to be "doing a lawful act in a lawful way," and he pointed out that, "by driving on a suspended license and by driving without insurance, those are two acts that [defendant is] not committing right there lawfully."

2. Analysis

In order to prevail on a claim that defense counsel rendered ineffective assistance, defendant must show both that (1) counsel's representation fell below an objective

11

standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694; *People v. Hernandez* (2012) 53 Cal.4th 1095, 1105.)  "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  (*People v. Bolin* (1998) 18 Cal.4th 297, 333.)

"Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' [Citation.]"  (*People v. Lucas* (1995) 12 Cal.4th 415, 436-437.)  "'Reviewing courts will reverse convictions on the ground of inadequate counsel only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission.'"  (*People v. Zapien* (1993) 4 Cal.4th 929, 980.)  "[D]eciding whether to object is inherently tactical, and the failure to object will rarely establish ineffective assistance" (*People v. Hillhouse* (2002) 27 Cal.4th 469, 502; *People v. Batchelor* (2014) 229 Cal.App.4th 1102, 1111), as a "reviewing court will not second-guess trial counsel's reasonable tactical decisions" (*People v. Kelly* (1992) 1 Cal.4th 495, 520; *People v. Myers* (2007) 148 Cal.App.4th 546, 552).

"'[G]ross negligence is the exercise of so slight a degree of care as to raise a presumption of conscious indifference to the consequences.  [Citation.]  "The state of mind of a person who acts with conscious indifferences to the consequences is simply, 'I

12

don't care what happens.'" [Citation.] The test is objective: whether a reasonable person in the defendant's position would have been aware of the risk involved. [Citation.]' [Citation.]" (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1204.) The *Ochoa* court explained that, "although the test for gross negligence was an objective one, '[t]he jury should . . . consider all relevant circumstances . . . *to determine if the defendant acted with a conscious disregard of the consequences rather than with mere inadvertence*. [Citations.]' [Citations]." (*Id.* at p. 1205.)

Here, defendant has not met her burden of showing that, by not objecting to the evidence and argument that defendant did not have a valid driver's license or insurance, defense counsel's representation fell below an objective standard of reasonableness. First, the challenged evidence was highly probative and relevant to show defendant acted with gross negligence, specifically, to show defendant "actually appreciated the risks" of driving while unlicensed and uninsured, and that she consciously disregarded the consequences of taking on those risks by continuing to drive. (*People v. Ochoa*, *supra*, 6 Cal.4th at pp. 1205-1206.)

Second, the evidence was not unduly prejudicial under Evidence Code section 352. The evidence that defendant was unlicensed and uninsured was limited to two questions, which did not "necessitate [the] undue consumption of time." (Evid. Code, § 352.) Additionally, it did not tend to evoke an emotional response against defendant, particularly in the way the evidence was presented. The prosecutor admonished the jury that defendant was not grossly negligent solely because she drove while unlicensed and

13

uninsured. The trial court also instructed the jury that it could not convict defendant based solely on this evidence. The jury was also advised that it must follow the law as the trial court explained, and that it must not let bias, sympathy, prejudice or public opinion affect its decision. We presume the jurors understood and followed the trial court's instructions (*People v. Wilson* (2008) 44 Cal.4th 758, 803), and that they convicted defendant based on the evidence and the law, not because of an "emotional bias" that she was a "bad person" for driving while unlicensed and uninsured.

Additionally, by having defendant plead guilty to driving with a suspended license and driving without insurance before jury selection, defense counsel effectively limited evidence of defendant's "rather prejudicial" and "bad DMV history," which may have been admissible under Evidence Code section 1101, subdivision (b) to show defendant's intent, knowledge, or absence of mistake or accident. As noted, in exchange for defendant's agreement to plead guilty to counts 2 and 3, the prosecutor agreed to limit the evidence of defendant's driving record to the statements defendant provided to the detectives, namely, her statement that she was driving on this occasion while unlicensed and uninsured. This was a reasonable tactical decision by defense counsel.

Defendant has also not established that she would have obtained a more favorable result at trial had defense counsel objected to the admission of evidence that she was driving with a suspended license and without insurance. The prosecutor presented evidence that defendant's car was traveling at 58 miles per hour in a 40 miles per hour zone when it struck the center divider and ended up in ongoing traffic and striking the

14

Buckleys' Prius. Defendant was also not wearing glasses, even though she acknowledged not having 20/20 vision, and even though her expired driver's license from Texas required her to do so. Witnesses for the prosecution and defense also testified that, despite defendant's claims to the contrary, it was not raining at the time of the accident, and Officer Matthews testified there was a flashing speed board to alert drivers that they were driving above the speed limit, as well as a sign to warn drivers of a curve in the road. Officer Matthews also rejected the defense theory that the roadway was defective or that it contributed to the collision, and it was his opinion that defendant's Hyundai did not hydroplane, as the tire friction marks from defendant's Hyundai that he observed at the scene of the accident were inconsistent with such a theory.

Because defendant has not established that defense counsel's representation fell below an objective standard of reasonableness, or that defense counsel's performance was prejudicial, she has not established that her trial counsel rendered ineffective assistance of counsel.

B. *The People Did Not Misstate the "Beyond a Reasonable Doubt" Burden*

Defendant claims the prosecution misstated its "beyond a reasonable doubt" burden in closing argument and effectively reduced its burden of proof, in violation of defendant's constitutional due process rights. Specifically, defendant contends the prosecutor committed misconduct by suggesting that the People could meet their "beyond a reasonable doubt" burden if the jury found defendant's actions to be unreasonable.

15

The People claim that, because defendant did not object to the prosecutor's closing argument, she has forfeited her claim of prosecutorial misconduct. We agree. "[A]s a general matter a claim of prosecutorial misconduct is preserved for appeal only if the defendant objects in the trial court and requests an admonition . . . ." (*People v. Ledesma* (2006) 39 Cal.4th 641, 740.) Defendant forfeited her claim of prosecutorial misconduct by failing to object during trial and give the court an opportunity to correct any errors. However, even if she had preserved the issue, the People did not misstate the "beyond a reasonable doubt" standard. Thus, there was no prosecutorial misconduct.

As a general rule, an explanation of the reasonable doubt standard is improper if it "'attempt[s] to absolve the prosecution from its . . . obligation to overcome reasonable doubt on all elements [citation].' [Citations.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 666.) Penal Code section 1096 defines reasonable doubt as follows: "'It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.'"

Defendant asserts the People misstated their burden of proof when, during closing argument, the prosecutor stated: "But my burden is beyond a reasonable doubt. [¶] And think about this: Everything I'm asking you to consider, I'm asking you to consider what a reasonable person would have done. Whether this is beyond a reasonable doubt. *It's all about being reasonable or not being reasonable.*" (Italics added.) Defendant claims,

16

by making this statement the prosecutor improperly suggested "not being reasonable satisfie[d] the prosecution's burden of proof."

In the context of the prosecutor's entire argument, along with the court's instructions to the jury, the prosecutor did not misstate the People's burden of proof. "When attacking the prosecutor's remarks to the jury, the defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in an improper or erroneous manner. [Citations.] In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]' [Citations.]" (*People v. Centeno*, *supra*, 60 Cal.4th at p. 667.)

Here, the prosecutor reminded the jury, both before and after making the challenged statement, that the People's burden of proof was "beyond a reasonable doubt." He also twice admonished the jury that if anybody told it differently, "they're asking you to not follow the law." The prosecutor also explained to the jury what the terms "proof beyond a reasonable doubt" and "abiding conviction" meant. Based on the prosecutor's whole argument, and rather than eliminating or lessening the People's burden of proof, the prosecutor's comments regarding "what a reasonable person would have done" and "[i]t's all about being reasonable or not being reasonable" addressed whether "defendant's grossly negligent conduct caused the death of another person," an element of the charged offense of vehicular manslaughter with gross negligence. In explaining

17

what constituted "gross negligence," the prosecutor advised the jury: "We have to look at what a reasonable person would have done or would not have done in that particular standard. Not what the defendant believed was right, what was in her mind. We look at what a reasonable person would have done in that situation." Considering the prosecutor's entire argument, it is not likely that the challenged statement confused the jury and led it to use reasonableness, rather than beyond a reasonable doubt, as its standard of proof.

Additionally, the trial court also twice provided the jury with the beyond a reasonable doubt instruction, and the trial court reiterated on other occasions that the prosecution had the burden of proving defendant's guilt beyond a reasonable doubt. The trial court also instructed the jury that it "must follow the law as I explain it to you, even if you disagree with it. If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions." As noted, we presume the jurors understood and followed the court's instructions in this case. (*People v. Wilson*, *supra*, 44 Cal.4th at p. 803; *People v. Williams* (2009) 170 Cal.App.4th 587, 635.)

Defendant contends that the prosecutorial misconduct here was similar to the prosecution's improper argument in *People v. Centeno*, *supra*, 60 Cal.4th 659, which the court concluded "clearly diluted the People's burden." (*Id.* at p. 673.) *Centeno* is distinguishable because, in that case, the prosecution argued repeatedly that the jury could convict the defendant of child molestation if the People's version of events was reasonable. (*Id*. at pp. 665, 673.) Here, the prosecutor repeatedly reminded the jury that

18

the People had to prove their case beyond a reasonable doubt, and he only asked the jury, in the context of whether defendant was grossly negligent, "to consider what a reasonable person would have done. Whether this is beyond a reasonable doubt. It's all about being reasonable or not being reasonable." The prosecutor here did not suggest that the jury could convict defendant solely if they found her actions to be unreasonable.

In the context of the People's entire closing argument, along with the court's instructions, the prosecutor did not commit prosecutorial misconduct, as he did not misstate the "beyond a reasonable doubt" burden. Because no prosecutorial misconduct was committed, defense counsel did not render ineffective assistance of counsel in failing to object to the prosecutor's closing remarks. (*People v. Osband* (1996) 13 Cal.4th 622, 700; see *People v. Williams* (1997) 16 Cal.4th 153, 223-224 [where there has been no prosecutorial misconduct, there has been no ineffective assistance of counsel].)

## V. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
                                                        P. J.


We concur:

McKINSTER
                    J.

MILLER
                    J.

19