Filed 4/19/12

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

    Plaintiff and Respondent,

    v.

JACOB TOWNLEY HERNANDEZ,

    Defendant and Appellant.

S178823

Ct.App. 6 H031992

Santa Cruz County
Super. Ct. No. F12934

Defendant Jacob Townley Hernandez (Townley),[1] convicted of attempted murder, contends the trial court violated his right to counsel as guaranteed by the Sixth Amendment to the United States Constitution, by barring his attorney from discussing with him the existence or contents of a sealed transcript of a witness's plea agreement proceedings and a sealed declaration executed by the witness as part of those proceedings. We hold that Townley can obtain relief on that claim only by establishing that the trial court's order affected the reliability of the trial process, a question not addressed by the Court of Appeal. We reverse the judgment of the Court of Appeal and remand the matter for further proceedings.

---

[1]    In accordance with the parties' practice, we refer to defendant as Townley.

# BACKGROUND

On the evening of February 17, 2006, four young men in a white Honda sedan drove into a neighborhood associated with the Sureño criminal street gang. The driver remained in the car, with the engine running. The other men, each of whom was wearing clothing suggesting an association with the Norteño criminal street gang, approached the victim, Javier Lazaro, who was walking on the sidewalk across the street. Lazaro was not associated with any gang, but was wearing blue, a color linked with the Sureño criminal street gang. One of the men shot Lazaro five times, injuring but not killing him. The men then ran back to the car, jumped in, and sped away.

A short time later, police located the Honda near an apartment known to be a gang hangout, where they found a number of people, including Townley. Officers determined Townley was a possible witness and transported him to the police station. During the trip, the transporting officer received information Townley had been seen secreting a small gun in one of his shoes and a small bag of bullets in the other. The officer stopped the car and searched Townley, finding a .25-caliber handgun in one of Townley's shoes and in the other a velvet sack containing 20 live cartridges. Townley's hands and jacket sleeves tested positive for gun residue. It was later determined that bullet casings found at the scene of the shooting had been fired from the gun.

Townley invoked his right not to speak with the authorities. Investigators, however, took statements from three other men thought to have been involved in the crime: Jesse Carranco, Reuben Rocha, and Noe Flores. Each admitted some involvement, and each reported Townley was the fourth participant. Each man, including Townley, was charged with premeditated attempted murder with enhancements for personal use of a firearm, discharge of a firearm, discharge of a

firearm causing injury, and infliction of great bodily injury. (Pen. Code, §§ 187, 664, 12022.5, subd. (a)(1), 12022.53, subds. (b), (c), (d), 12022.7, subd. (a).)

Townley successfully moved to sever his trial from that of his codefendants. Later, during closed proceedings, Flores and Rocha pleaded guilty to assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(2).) The other charges against them were dismissed. As part of the plea agreements, the prosecutor required each man to execute a short declaration about the events of February 17, 2006. It does not appear the prosecutor sought the declarations to use against Townley or Carranco; rather, she sought to impress on each declarant that he could be charged with perjury if he attempted to undermine the prosecution's case against Townley or Carranco by testifying contrary to the facts recited in his declaration. The trial court, concerned that Flores and Rocha would be vulnerable to retaliation if the existence or contents of their declarations were revealed outside of the plea proceedings, ordered that the declarations and transcripts of the plea proceedings be sealed. It ordered, further, that they were to remain sealed unless either man appeared as a witness in the trials of Townley or Carranco, at which point the sealed materials relating to that man's plea were to be made available to defense counsel and could be used by either the defense or the prosecution for purposes of impeachment.

Townley's and Carranco's cases were then consolidated and tried to a jury. The defense attorneys were provided with summaries of police interviews of Rocha and Flores and a copy of Flores's tape-recorded interview, but they were not given anything related to the plea proceedings. The attorneys, who nonetheless knew of the declarations, asked the court to revoke the order forbidding their discovery. The court denied the request. Observing that the sealing order had been entered in other proceedings, the court expressed doubt it had the power to modify or revoke the order in the absence of the declarants and

3

their attorneys and without their consent. The court then ordered the attorneys not to disclose the existence or the contents of the declarations to their clients, investigators, or any other persons, but indicated it would revisit the matter if Rocha or Flores testified.

Rocha did not appear at the trial, but Flores appeared as a witness for the prosecution and provided testimony that was essentially consistent with, but more detailed than, the information he had provided to police investigators. At the end of the first day of Flores's testimony, in the jury's absence, the court ordered the prosecution to provide copies of Flores's sealed declaration to defense counsel "to provide for adequate cross-examination of Mr. Flores." But it again prohibited counsel from sharing the statements with their clients, investigators, or other attorneys and further ordered that the statements be used solely "for purposes of cross-examination." Both defense attorneys used Flores's declaration to impeach him, establishing discrepancies between it and his trial testimony. For example, witnesses to the shooting reported that the man who shot Lazaro wore a red-and-black plaid shirt or jacket. Flores testified he had worn a blue or black shirt and Townley had worn a red-and-black flannel shirt. Defense counsel brought out that in his declaration Flores had asserted he had worn a red-and-black Pendleton shirt.

The jury returned a verdict finding Townley guilty of attempted premeditated murder. It also found true the enhancement allegations of personal use of a firearm and infliction of great bodily injury.

The Court of Appeal reversed. It found an absence of good cause for the order sealing Flores's declaration and the transcript of his plea proceedings, concluding the order therefore unjustifiably interfered with Townley's access to

4

his attorney.[2]  The court then held that the trial court's order barring defense counsel from discussing the declaration with Townley violated Townley's right to counsel under the Sixth Amendment to the United States Constitution, requiring automatic reversal without a showing of prejudice resulting from the trial court's error.  We disagree.

## DISCUSSION

### I.

The Sixth Amendment to the United States Constitution provides:  "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  As the Supreme Court has stated:  "An accused's right to be represented by counsel is a fundamental component of our criminal justice system.  Lawyers in criminal cases 'are necessities, not luxuries.' Their presence is essential because they are the means through which the other rights of the person on trial are secured.  Without counsel, the right to a trial itself would be 'of little avail' . . . .  'Of all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive for it affects his ability to assert any other rights he may have.' "  (*United States v. Cronic* (1984) 466 U.S. 648, 653-654, fns. omitted (*Cronic*).)

In *Geders v. United States* (1976) 425 U.S. 80 (*Geders*), the Supreme Court held that a trial court's order violated the Sixth Amendment when it barred the defendant from discussing the case with his attorney during a 17-hour overnight recess called after the first day of the defendant's testimony.  The court recognized

---

**2**    We accept and express no opinion on the appellate court's conclusions on these points, as no party has challenged them.

5

valid reasons exist for sequestering a witness,[3] but held that when the purpose served by sequestration conflicts with "the defendant's right to consult with his attorney during a long overnight recess in the trial, . . . the conflict must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel." (*Geders*, at p. 91.)  Turning to the order before it, the court explained:  "It is common practice during such recesses for an accused and counsel to discuss the events of the day's trial.  Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed.  The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier.  At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events.  Our cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance." (*Id.* at p. 88.)  The court has since clarified that in *Geders* it established a rule of reversal *per se.*  (E.g., *Mickens v. Taylor* (2002) 535 U.S. 162, 166 ["We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding."].)

Geders left two questions unanswered.  By emphasizing the length of the sequestration order and the complete ban on attorney-client communications during a critical period of the trial proceedings, the Supreme Court left open the

---

**3**     The court explained that sequestration may restrain witnesses from tailoring their testimony to that of earlier witnesses, may aid in detecting testimony that is less than candid, and may prevent improper attempts to influence a witness's testimony in light of the testimony already given. (*Geders*, *supra*, 425 U.S. at p. 87.)

6

possibility that the Sixth Amendment might not be violated by some lesser interference with a client's ability to consult with counsel.  With respect to this point, it is perhaps significant that the majority opinion did not embrace the expansive view of the concurring justices that "the general principles adopted by the Court today are fully applicable to the analysis of *any* order barring communication between a defendant and his attorney, at least where that communication would not interfere with the orderly and expeditious progress of the trial." (*Geders*, *supra*, 425 U.S. at p. 92 (conc. opn. of Marshall, J., joined by Brennan, J.).)  The high court also did not discuss whether reversal without inquiry into resulting prejudice is appropriate in all cases of unwarranted interference with the right to counsel.

In *Cronic*, *supra*, 466 U.S. 648, the Supreme Court provided a partial answer to both questions.  The district court in that case had appointed an inexperienced attorney to represent the defendant after the defendant's first attorney had withdrawn, and had allowed the new attorney only 25 days to prepare for trial.  (*Id.* at p. 649.)  The Tenth Circuit reversed the defendant's conviction, finding the circumstances mandated an inference that counsel had been unable to discharge his duties and thus the district court's actions violated the defendant's constitutional right to counsel.  (*Id.* at pp. 650, 658.)  The Supreme Court reversed. It affirmed that the Sixth Amendment guarantees not only the right to the assistance of counsel but also the right to the *effective assistance* of counsel (*Cronic*, at pp. 654-656), which is "the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing" (*id.* at p. 656), but the court also explained that not every unwarranted imposition on an attorney's ability to fully represent his or her client violates the Sixth Amendment. Thus, "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair

7

trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." (*Cronic*, at p. 658.)

The Supreme Court explained that in most cases the defendant bears the burden of showing that the challenged conduct affected the reliability of the trial process.  (*Cronic*, *supra*, 466 U.S. at p. 658.)  But it further held:  "There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.  [¶] Most obvious, of course, is the complete denial of counsel.  The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.  Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." (*Id.* at pp. 658-659, fns. omitted.)

In a supporting footnote, the court observed it had "uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." (*Cronic*, *supra*, 466 U.S. at p. 659, fn. 25.)  It provided examples of instances where the government's interference with counsel's ability to render effective assistance justified a presumption of prejudice:  *Geders*, *supra*, 425 U.S. 80 (bar on attorney-client consultation during overnight recess); *Herring v. New York* (1975) 422 U.S. 853 (bar on summation at bench trial); *Brooks v. Tennessee* (1972) 406 U.S. 605, 612-613 (requirement that defendant be the first defense witness); *White v. Maryland* (1963) 373 U.S. 59, 60 (denial of counsel at preliminary hearing); *Hamilton v. Alabama* (1961) 368 U.S. 52, 55 (denial of counsel at arraignment); *Ferguson v. Georgia* (1961) 365 U.S. 570, 593-596 (defense counsel barred from questioning defendant at trial); *Williams v. Kaiser*

8

(1945) 323 U.S. 471, 475-476 (guilty plea taken after defendant requested but was denied counsel). (*Cronic*, at p. 659, fn. 25.) In the following footnote the court explained: "Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." (*Id*. at p. 659, fn. 26.) It further observed: "Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." (*Id.* at pp. 659-660.) The *Cronic* court concluded the circumstances before it did not justify a presumption of prejudice. It therefore remanded the matter to allow the defendant to identify specific instances of ineffectiveness that could then be evaluated under the standards the court enunciated the same day in *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*). (*Cronic*, at pp. 662-666 & fn. 41.)

In *Strickland*, the court stated the now familiar test that a defendant claiming the ineffective assistance of counsel is required to show both that counsel's performance was deficient and that counsel's errors prejudiced the defense. (*Strickland*, *supra*, 466 U.S. at p. 687.) The court explained: "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (*Ibid.*) Further, also relevant to the issue presented here, the court again explained prejudice is presumed in certain Sixth Amendment contexts, such as those it had identified in *Cronic*, *supra*, 466 U.S. at page 659, footnote 25, because "[p]rejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. [Citation.] Moreover, such circumstances involve impairments of the Sixth Amendment right

9

that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent." (*Strickland*, at p. 692.)

In *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, the Supreme Court clarified the reason for requiring a showing of resulting prejudice when the claim is a deprivation of the effective assistance of counsel. It explained that the Sixth Amendment right to counsel has two aspects: the right to counsel derived from the "root meaning" of the amendment (*id*. at pp. 147-148), which includes the right to counsel of choice; and the right to a fair trial guaranteed through the due process clause, but defined through the Sixth Amendment. The high court explained that where the right to be assisted by counsel of one's choice is wrongly denied, inquiry into resulting prejudice is unnecessary to establish a Sixth Amendment violation. (*Gonzalez-Lopez*, at pp. 146-148.) But, "[c]ounsel cannot be 'ineffective' unless his mistakes have harmed the defense (or, at least, unless it is reasonably likely that they have). Thus, a violation of the Sixth Amendment right to *effective* representation is not 'complete' until the defendant is prejudiced." (*Id.* at p. 147; and see *Strickland*, *supra*, 466 U.S. at p. 685.)

**II.**

Turning to the present case, Townley was provided with appointed counsel, who appeared at all critical times and actively represented him throughout the proceedings. As an indigent defendant, Townley was not entitled to select an attorney (*People v. Jones* (2004) 33 Cal.4th 234, 244; *Drumgo v. Superior Court* (1973) 8 Cal.3d 930, 934), and he makes no claim he was deprived of his counsel of choice. Accordingly, there was no violation of the right to counsel derived from the root meaning of the Sixth Amendment to the United States Constitution. The trial court's order, which implicated only that aspect of the Sixth Amendment protecting Townley's right to the *effective* assistance of counsel, amounts to constitutional error only if Townley suffered resulting prejudice.

10

The burden of establishing prejudice falls on Townley unless the circumstances are comparable in magnitude to those presented in *Geders*, *supra*, 425 U.S. 80, by rendering the adversarial process presumptively unreliable, such as where an accused is denied counsel at a critical stage of trial, or counsel entirely fails or is unable to subject the prosecution's case to meaningful adversarial testing. (*Cronic*, *supra*, 466 U.S. at p. 659 & fns. 25, 26.) The circumstances of this case do not rise to that standard.

The Supreme Court has explained that the phrase " 'a critical stage' " was used in *Cronic* "to denote a step of a criminal proceeding, such as arraignment, that held significant consequences for the accused." (*Bell v. Cone* (2002) 535 U.S. 685, 695-696.) Here, defense counsel was present during all critical stages of the trial and Townley at all times had access to his attorney, including during and after Flores's testimony. In contrast to the situation in *Geders*, *supra*, 425 U.S. 80, where the defendant was prevented from discussing the events of a day's trial, Townley was at all times free to consult with his attorney generally about trial tactics and defense strategy, and although he was not fully informed about Flores's probable testimony before Flores took the stand, he was not prevented from discussing how to respond to Flores's testimony after hearing it.

A defendant claiming counsel failed or was unable to subject the prosecution's case to meaningful adversarial testing is relieved from the burden of showing prejudice only if " 'counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.' " (*Bell v. Cone*, *supra*, 535 U.S. at p. 696, italics added, quoting *Cronic*, *supra*, 466 U.S. at p. 659.) Prejudice must be shown if counsel has opposed the prosecution throughout the relevant proceeding, even if counsel failed or was unable to do so at specific points. (*Bell*, at pp. 696-

11

697.)[4] Townley's attorney opposed the prosecution throughout the proceedings. That he was unable to discuss Flores's sealed declaration and the sealed transcript of the related plea proceedings does not mean he entirely failed to subject the prosecution's case to adversarial testing and therefore does not justify reversal without a showing of prejudice.

Finally, the circumstances present here do not render it so likely Townley was deprived of the effective assistance of counsel as to entitle him to a presumption of prejudice without inquiry into the actual conduct of the trial. (*Cronic*, *supra*, 466 U.S. at p. 659.) "As the high court pointed out in *Mickens*, the presumption of prejudice is a prophylactic measure established to address 'situations where *Strickland*[, *supra*, 466 U.S. 668,] itself is evidently inadequate to assure vindication of the defendant's Sixth Amendment right to counsel.' (*Mickens* [*v. Taylor*], *supra*, 535 U.S. at p. 176.) Only when the court concludes that the possibility of prejudice and the corresponding difficulty in demonstrating such prejudice are sufficiently great compared to other more customary assessments of the detrimental effects of deficient performance by defense counsel, must the presumption be applied in order to safeguard the defendant's

---

**4**     Because a defendant is relieved from the burden of showing prejudice only if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing, we need not consider whether, as Townley contends, the trial court's order might have been interpreted to bar defense counsel from discussing anything referenced in the sealed documents, even if the same material also appeared in unsealed materials such as Flores's statement to the police. The order, even if so broadly construed, did not prevent counsel from opposing the prosecution throughout the proceedings. Nor was counsel prevented from vigorously cross-examining Flores or from mentioning Flores's declaration during the course of that cross-examination.

fundamental right to the effective assistance of counsel under the Sixth Amendment." (*People v. Rundle* (2008) 43 Cal.4th 76, 173.)

Here, in contrast to the above mentioned examples provided by the court in *Cronic*, *supra*, 466 U.S. at page 659, footnote 25 (see *ante*, at p. 8), where the nature of the imposition on the right to counsel made it difficult to assess its effect on the outcome of the trial, Townley's complaint is susceptible to harmless error analysis. The primary value of the sealed materials to Townley was their usefulness as tools of impeachment during cross-examination, either to highlight discrepancies between the facts Flores recited in his declaration and his testimony at trial, or to support the argument Flores had fashioned a declaration favorable to himself and must have then felt compelled to testify in accordance with that declaration. Counsel's inability to consult with Townley about the materials would not have hampered his ability to make either point.[5]

We observe that the Supreme Court has held prejudice will not be presumed for purposes of due process through the Sixth Amendment's confrontation clause even when the defendant has been denied *any* opportunity to impeach a witness for bias. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 684 [trial court barred all inquiry into the possibility that a prosecution witness would be biased as a result of the state's dismissal of a pending charge against him].) As the court explained there: "Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case,

---

[5]    Townley asserts that Flores's declaration contains at least 22 distinct details not contained in the police reports. But the very ease with which these details may be identified works against his argument that it would be difficult to assess the prejudicial effect of the trial court's order.

13

whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." (*Id.* at p. 684.) It also has been held that under some circumstances an order limiting the ability of a defendant to consult with his attorney about some portion of the evidence may be justified. (See *U.S. v. Moussaoui* (4th Cir. 2010) 591 F.3d 263, 289, and cases cited there.) That holding is inconsistent with the conclusion such a restriction presumptively deprives a defendant of a fair trial. Finally, although the suppression by the prosecution of evidence that might be used to impeach a prosecution witness may violate due process (*Brady v. Maryland* (1963) 373 U.S. 83, 87), it is unconstitutional only if the evidence is "material" under the *Strickland* formulation: there is a reasonable probability that, absent the error, the fact finder would have had a reasonable doubt respecting guilt. (*Kyles v. Whitley* (1995) 514 U.S. 419, 433; *United States v. Bagley* (1985) 473 U.S. 667, 682; *Strickland*, *supra*, 466 U.S. at p. 694.) There is no reason in logic to require a showing of prejudice to establish reversible error when impeaching evidence is withheld from a defendant and the defendant's attorney, but to presume prejudice when impeaching evidence is withheld only from the defendant, even if it was the trial court and not the prosecution that prevented the defendant from learning about the evidence.

We find, for the above stated reasons, that the circumstances present here are not comparable in magnitude to those in *Geders*, *supra*, 425 U.S. 80, or to the other cases cited in *Cronic*, *supra*, 466 U.S. at page 659, footnote 25, and thus do not justify a presumption of prejudice.

Townley, however, asserts that settled law establishes a rule of reversal per se for *any* improper restriction on attorney-client communications. To support this assertion, he chiefly relies on language from *Perry v. Leeke* (1989) 488 U.S. 272.

14

The Supreme Court in that case found a complete ban on attorney-client communication during a 15-minute recess at the end of the defendant's direct testimony was *not* an unwarranted imposition on the right to counsel. (*Id.* at pp. 280-285.) But in so finding, it distinguished *Geders*, *supra*, 425 U.S. 80, explaining: "The interruption in *Geders* was of a different character because the normal consultation between attorney and client that occurs during an overnight recess would encompass matters that go beyond the content of the defendant's own testimony—matters that the defendant does have a constitutional right to discuss with his lawyer, such as the availability of other witnesses, trial tactics, or even the possibility of negotiating a plea bargain. *It is the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlling in the context of a long recess.*" (*Perry*, at p. 284, italics added.) Townley reads this explanation to state that any and all unwarranted court-imposed restrictions on communications between attorney and client violate *Geders.* We disagree.

The word "unrestricted" was used in the context of *Geders*'s complete bar to access to counsel for any and all purposes. *Geders* thus can be interpreted to explain that the Sixth Amendment is violated when the restriction on access to counsel was so profound as to create an inference that the defendant's attorney was unable to perform the essential functions of trial counsel. This interpretation is confirmed by the *Perry* court's explanation, at a different point in the opinion, that the disposition in *Geders* was consistent with the court's later decision in *Strickland*, *supra*, 466 U.S. 688, where it cited *Geders* as an example of a case where a defendant was able to establish a Sixth Amendment violation without a showing of actual prejudice. The court explained: "Our citation of *Geders* in this context was intended to make clear that '[a]ctual or constructive denial of the assistance of counsel *altogether*,' [citation], is not subject to the kind of prejudice

15

analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective." (*Perry v. Leeke*, *supra*, 488 U.S. at p. 280, italics added.) The order here, which at most prevented defense counsel from fully discussing the anticipated testimony of a single prosecution witness, albeit one key to the prosecution, cannot reasonably be characterized as the denial of the assistance of counsel *altogether*.

Townley nevertheless asserts that unrestricted communication about the sealed material might have led to changes in strategy or identification or production of other witnesses, or might have altered plea negotiations. He complains that requiring him to show the existence of such matters would of necessity reveal strategy and other privileged information, and thus would unfairly prejudice him upon retrial. But the same argument can be made in many cases of claimed attorney ineffectiveness. In *Cronic*, for example, the court-imposed limitations on counsel's ability to prepare for trial likely affected trial strategy, witness preparation, and plea negotiations. Yet the Supreme Court declined to presume a Sixth Amendment violation and remanded the case so the defendant might specify exactly how the trial court's order had deprived him of the effective assistance of counsel. (*Cronic*, *supra*, 466 U.S. at pp. 666-667.)

Townley further observes that several appellate courts have applied *Geders*'s rule of reversal per se in cases where the trial court, although not restricting the defendant's access to his or her attorney during a recess from the proceedings, barred any discussion of the defendant's ongoing testimony. (E.g., *Martin v. U.S.* (D.C. 2010) 991 A.2d 791, 793; *U.S. v. Cobb* (4th Cir. 1990) 905 F.2d 784, 791-792; *Mudd v. U.S.* (D.C. Cir. 1986) 798 F.2d 1509, 1512-1515.) We need not address the merits of these decisions because they are distinguishable. The harm from preventing an accused from speaking with his or her attorney about his or her own testimony extends further than that attending

16

court-imposed limitations on communications about a nondefendant witness, and is also more difficult to quantify. As the Fourth Circuit explained, to remove from the accused "the ability to discuss with his attorney any aspect of his ongoing testimony effectively eviscerated his ability to discuss and plan trial strategy. To hold otherwise would defy reason. How can competent counsel not take into consideration the testimony of his client in deciding how to try the rest of the case?" (*Cobb*, at p. 792.) And in *Mudd*, the District of Columbia Circuit observed: "Even though [the defendant] was free to discuss strategy and tactics, there are obvious, legitimate reasons he may have needed to consult with counsel about his upcoming cross-examination. For example, [the defendant's] lawyer may have wanted to warn defendant about certain questions that would raise self-incrimination concerns, or questions that could lead [the defendant] to mention excluded evidence. More generally, defendant may have needed advice on demeanor or speaking style, a task made more difficult if specific testimony could not be mentioned." (*Mudd*, at p. 1512.) Such considerations are not present here.

## CONCLUSION

The Court of Appeal found the trial court erred by prohibiting Townley's attorney from discussing Flores's sealed declaration with Townley or any other person. No party has challenged that finding, and we therefore accept and express no opinion on it. As we have explained, however, the appellate court's further conclusion that the error violated Townley's right to counsel under the Sixth Amendment to the United States Constitution without any showing of resulting prejudice was incorrect. The trial court's order implicated only that aspect of the Sixth Amendment right to counsel defining the right to a fair trial guaranteed through the due process clause. Because a violation of that aspect of the Sixth Amendment is not "complete" until the defendant is prejudiced, an inquiry into resulting prejudice is required unless the circumstances are so likely to have

17

undermined the reliability of the finding of guilt as to justify a presumption of prejudice. As we have also explained, not all unwarranted interference with a client's ability to consult with counsel justifies a presumption of prejudice, requiring per se reversal. Where, as here, the interference prevents counsel from consulting with a client about a specific piece of evidence, a presumption of prejudice is not justified; the error is reversible only upon a showing of prejudice, as would be the case if prosecutorial misconduct suppressed the evidence altogether. Townley therefore may obtain reversal only by showing, in accordance with the standard stated in *Strickland*, *supra*, 466 U.S. at pages 686-687, that the trial court's order deprived him of the effective assistance of counsel and there is a reasonable probability that, but for the error, the result of the trial would have been different.

## DISPOSITION

The judgment of the Court of Appeal is reversed. The case is remanded to that court to conduct further proceedings consistent with this opinion.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**

18

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Hernandez

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 178 Cal.App.4th 1510
**Rehearing Granted**

_____

**Opinion No.** S178823
**Date Filed:** April 19, 2012

_____

**Court:** Superior
**County:** Santa Cruz
**Judge:** John Jeffrey Almquist

_____

**Counsel:**

Marc J. Zilversmit for Defendant and Appellant.

Ann C. Moorman and John T. Philipsborn for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Seth K. Schalit, Laurence K. Sullivan and Amy Haddix, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Marc J. Zilversmit
523 Octavia Street
San Francisco, CA  94102
(415) 431-3472

Amy Haddix
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-5893