Filed 10/10/22  P. v. Thomas CA3
Opinion following rehearing

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM HENRY THOMAS,<br><br>Defendant and Appellant. | C091728<br><br>(Super. Ct. No. 18FE009080)<br><br>ON REHEARING |

A jury convicted defendant William Henry Thomas of first degree murder and arson.  The trial court sentenced defendant to 50 years to life in prison.

Defendant now contends (1) the trial court should not have allowed testimony of a candle experiment that had not been disclosed to the defense prior to opening statement, (2) it was error to exclude evidence of another person's tattoo that said "Arson and Pyro," (3) the trial court committed instructional error, (4) defendant's 2003 battery conviction was not a serious felony for purposes of sentencing, (5) cumulative error warrants

1

reversal, and (6) we should review the sealed transcripts from the trial court's hearing under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

We conclude (1) even if it was error to admit the candle experiment testimony, defendant has not established prejudice, (2) the trial court did not abuse its discretion in excluding the tattoo evidence, (3) defendant's instructional error claim is forfeited, (4) there is sufficient evidence that defendant's 2003 battery conviction was a serious felony for purposes of sentencing, (5) there is no cumulative error, and (6) having reviewed the sealed transcripts, the trial court did not abuse its discretion under *Pitchess*.  We will affirm the judgment.

BACKGROUND

On the night of March 31, 2018, several people gathered at an apartment to bid farewell to Aryanna Doyle, who was relocating to Southern California.  Doyle was showing signs of intoxication such as stumbling and slurred speech.  She left the apartment without informing anyone.

Across the street from the apartment was a park.  A man named Kevin testified that Doyle was at the park with him and defendant in the early morning hours of April 1, 2018.  They sipped from Doyle's bottle of alcohol and engaged in small talk. Doyle told Kevin she had been hanging out and drinking in the park for a couple of hours.  She asked Kevin to stay with her because she was "kind of creeped out" by defendant.  Kevin sought to reassure her, saying he was acquainted with defendant and thought defendant was fine.

Around 7:00 a.m., Doyle and defendant left the park together.  At 9:11 a.m. someone called the fire department to report a fire.  At 9:20 a.m., law enforcement fire investigators on patrol followed a large plume of smoke to a trailer park near where Doyle, Kevin, and defendant had been drinking.  One of the trailers was on fire. Firefighters were already there when the fire investigators arrived.  Doyle's body was inside.

2

A man named Charles testified that he saw defendant that night going through trash and then lighting it on fire. He said that although people regularly lit trash in trash cans in the park, on that occasion it did not appear that defendant was lighting fires to stay warm. Two days after the fire, a detective searched defendant and found a partially-used matchbook, a hand-size butane torch, and a black Bic lighter.

A forensic pathologist concluded Doyle died of multiple fire-related injuries. She also had blunt-force injuries to her neck and lips. When she died, Doyle's blood alcohol level was .34 percent, and she had cocaine in her system. Defendant's DNA was found on an external vaginal swab and an anal swab taken during Doyle's autopsy.

A former employee of the company that managed the trailer park testified that at the time of the fire, a number of trailers had been abandoned, including the trailer where Doyle's body was found. People had been breaking into the trailer.

A fire investigations peace officer (the fire investigator) who worked for the Sacramento Metropolitan Fire District (the fire district) testified that he investigated the scene of the fire, and processed the evidence by sifting through the fire debris using a metal screen, a very methodical process aimed at locating items important to the determination of the cause of the fire. He was the only person who conducted the sift and dig of the entire trailer.

The fire investigator explained that in fires that burn in the time frame of the April 1 fire, a cigarette butt will not completely be consumed by the fire. "It will shrink. It will become black, but you will still find some type of remnants" of the cigarette butts.

Other than a heavily-burnt carton of cigarettes that was found in Doyle's purse, the fire investigator found no evidence of cigarette butts or any other tobacco-related products inside the trailer. There also was no evidence of candles inside the trailer. "[E]verything that I saw at the scene indicated to me that it was not just one fire, but . . . two fires that burned into each other," the fire investigator testified. According to the fire investigator, the two points of origin were at different parts of the floor of the trailer:

3

near a utility closet and near the bathroom. There was no electrical wiring adjacent to where the two fires began. Had the fires been caused by faulty electrical wiring, the fire investigator would have expected a different burn pattern. The fire investigator concluded the fire was intentionally set using available combustibles and an open-flame device.

The defense expert witness, John Miller, testified he believed the fire began in one place, the vanity countertop of the bathroom. Miller based his conclusions on reports and photographs of the fire scene, witness statements, and the prosecution expert's testimony. Miller—a former captain in the Sacramento City Fire Department, where he worked as an arson investigator—testified that he had conducted over 2,500 fire origin and cause investigations in his career. He explained that a fire that spreads quickly via trash and debris could make it appear there was a second point of origin for a fire.

According to Miller, the fire may have started with a candle or a cigarette butt. Photos of the fire scene showed multiple discarded cigarette butts just outside the trailer. It was possible, Miller testified, that some of those cigarette butts had been inside the trailer when the fire began, but were moved by firefighters trying to prevent the fire from starting up again by shoveling burnt debris on the floor of the trailer to the outside. That movement would have been pursuant to a procedure called "overhaul." On cross-examination, Miller acknowledged he did not know if overhaul was standard procedure in the Sacramento Metro Fire Department when a body is found, but maintained it was standard procedure in the Sacramento City Fire Department.

Miller criticized the prosecution expert's apparent decision not to investigate stranded wires that were in mid-air above the bathroom vanity countertop, because those wires indicated that two devices (including, perhaps, a phone charger with a lithium ion battery, which are known to cause fires) were plugged into the electrical socket in the wall at the time of the fire. Miller opined an accidental fire could not be ruled out, and

4

the cause of the fire should have been "undetermined . . . because other items were not examined."

In closing argument, the prosecutor said defendant had a motive to burn the evidence of what happened in the trailer. The prosecutor argued defendant robbed Doyle and might have raped her. According to the prosecutor, defendant knew Doyle had money in her purse and defendant and Doyle had sex. That defendant was lighting other fires in the park that night supported the theory that the fire was not a mistake or accident.

Defendant's trial counsel argued in closing that the photographic evidence demonstrated precisely where the fire began. And the fire investigator, who said it started on the floor in the bathroom, was simply wrong. Defense counsel asked the jury: "Is it more reasonable to conclude that there wasn't a single cigarette butt in that entire trailer, or is it more reasonable that the butt was too small or consumed by the fire or misidentified or it was thrown out during the overhaul process . . . ?" Defense counsel further argued the fire investigator did not address the wires above the vanity countertop in the bathroom.

The jury found defendant guilty of arson and first degree murder. The trial court sentenced defendant to 50 years to life for the murder (25 years to life doubled because of a prior strike offense). (Pen. Code, §§ 667, subd. (e)(1) & 1170.12.) For the arson offense, the trial court selected the middle term and stayed that sentence pursuant to Penal Code section 654.

DISCUSSION

I

Defendant contends the trial court should not have allowed the prosecution to introduce evidence that had never been disclosed to the defense. Defendant further contends that because the trial court caused counsel's ineffectiveness, prejudice is presumed. The People counter that the trial court did not err, but in any event there was

5

no prejudice because the challenged evidence was collateral and did not pertain to a specific defense theory.

In an opening statement to the jury, defendant's trial counsel said the defense expert would tell the jury they could not rule out cigarettes, electrical problems, or candles as a cause of the fire. The prosecutor subsequently disclosed to defense counsel that the fire investigator had conducted a candle experiment days after the fire. The prosecutor learned of the experiment the day he disclosed it. Over defense counsel's objection, the trial court permitted the fire investigator to testify about the experiment.

With reference to photographs of the experiment, the fire investigator testified that the results of the experiment were consistent with his experience that candle wax does not just evaporate but leaves a residue.

Defendant argues that in admitting this evidence, the trial court undercut his counsel's tactical decisions because his attorney made defense choices without knowing about the candle experiment. But even if it was error for the trial court to allow the fire investigator to testify about an experiment that was not disclosed to the defense until after opening statement, defendant has not demonstrated prejudice.

Although defendant urges presumed prejudice, that notion in federal case law does not apply here. As the California Supreme Court explained *in People v. Hernandez* (2012) 53 Cal.4th 1095, such presumed prejudice arises when there are restrictions on access to counsel so profound that the defendant's attorney was unable to perform the essential functions of trial counsel (*id*. at p. 1109), or when the likelihood that any lawyer could provide effective assistance is small (*id*. at pp. 1104-1105). Here, however, the admission of the candle experiment testimony "cannot reasonably be characterized as the denial of the assistance of counsel altogether." (*Id.* at p. 1109, italics omitted.) This is so because the presence or absence of a candle in the trailer was not an essential pillar of the defense trial strategy. In his opening statement, defense counsel referenced other possible causes for the fire, such as cigarettes or an electrical problem. The candle

6

experiment testimony said nothing about the other two purported causes, which the jury rejected in any event.

Prejudice is not presumed here, and defendant has not demonstrated prejudice. Defendant has not shown a reasonable probability the result of the proceeding would have been different without the candle experiment testimony. (*People v. Sapp* (2003) 31 Cal.4th 240, 263) The contention fails.

II

Defendant next claims it was error to exclude evidence of a tattoo on Doyle's back that said "Arson and Pyro."

Before trial, the prosecution sought to exclude evidence of the tattoo, which Doyle apparently acquired at least 10 years before when she was a teenager. Defense counsel said the tattoo evidence would show that Doyle had the motive and intent to start fires. The trial court excluded the evidence under Evidence Code section 352, saying it would require a mini trial regarding the tattoo. The trial court added: "It was close to ten years -- 11 years before this event. There's no intervening evidence that [Doyle] was a pyro or an arsonist in between those events, and so, again, under 352, my analysis, it's more prejudicial than probative. It's an undue consumption of time. It could mislead the jury. It would call for speculation."

"Evidence Code section 352 provides the trial court with discretion to exclude otherwise relevant evidence if its probative value is substantially outweighed by the probability that admitting the evidence will unduly prolong the proceeding, prejudice the opposing party, confuse the issues, or mislead the jury. [Citation.] 'We apply the deferential abuse of discretion standard when reviewing a trial court's ruling under Evidence Code section 352.' " (*People v. Zepeda* (2008) 167 Cal.App.4th 25, 34-35.) Under that standard, we reverse when no reasonable judge would have made the same determination as the one on review. (*People v. Clark* (2019) 43 Cal.App.5th 270, 292.)

7

Here, the trial court did not abuse its discretion in excluding the tattoo evidence. And the application of this ordinary rule of evidence did not violate defendant's federal constitutional rights.  (See *People v. Bradford* (1997) 15 Cal.4th 1229, 1325.)

## III

In addition, defendant claims the trial court committed instructional error.  The People counter that defendant forfeited the claim by failing to raise it in the trial court. The People argue " ' "[a] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." ' " (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1163.)  Defendant did not address the People's forfeiture argument in his reply brief.

It is not this court's role to carry defendant's burden to affirmatively demonstrate error.  (See *People v. Sullivan* (2007) 151 Cal.App.4th 524, 549  [" ' "We must indulge in every presumption to uphold a judgment, and it is defendant's burden on appeal to affirmatively demonstrate error—it will not be presumed" ' "]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 102 [it is improper " 'to place upon the court the burden of discovering without assistance from appellant any weakness in the arguments of the respondent' "].)

We conclude defendant's contention is forfeited.  (Cf. *People v. Nguyen* (2017) 18 Cal.App.5th 260, 270 ["Defendant's reply brief does not respond to the People's request; we deem this to be acquiescence"].)

## IV

Defendant further contends his 2003 battery conviction (under Pen. Code, § 243, subd. (d)) was not a serious felony for purposes of sentencing.  (See *People v. Bueno* (2006) 143 Cal.App.4th 1503, 1508 ["one can commit a battery within the meaning of section 243, subdivision (d) without committing a serious felony within the meaning of section 1192.7, subdivision (c)(8)"].)

8

In this case, the trial court took judicial notice of a transcript from a 2003 plea hearing.  According to the transcript, the prosecutor said defendant committed battery when he punched out the victim's two front teeth.  Defendant pleaded no contest to the charged battery.

"It is the prosecution's burden to prove beyond a reasonable doubt all of the elements supporting its allegation of a sentence enhancement.  (*People v. Miles* (2008) 43 Cal.4th 1074, 1082)  'Where . . . the mere fact of conviction under a particular statute does not prove the offense was a serious felony, otherwise admissible evidence from the entire record of the conviction may be examined to resolve the issue.' "  (*People v. Roberts* (2011) 195 Cal.App.4th 1106, 1116.)

"A prosecutor's comments occurring immediately before a court accepts a defendant's guilty plea are part of the record of conviction."  (*People v. Sample* (2011) 200 Cal.App.4th 1253, 1261.)  Where a defendant "would normally and reasonably be expected to object to or respond to the prosecution's factual recital if the factual recital did not accurately reflect the circumstances of the offense to which the defendant was pleading guilty or no contest," the absence of an objection or response may be deemed an adoptive admission by defendant.  (*Id.* at p. 1265.)

"On review, we examine the record in the light most favorable to the judgment to ascertain whether it is supported by substantial evidence.  In other words, we determine whether a rational trier of fact could have found that the prosecution sustained its burden of proving the elements of the sentence enhancement beyond a reasonable doubt."  (*People v. Miles, supra*, 43 Cal.4th at p. 1083.)

Defendant offers reasons why he did not object, but we find them unpersuasive.  Given "[t]he possibility of future consequences, including the application of habitual offender statutes," defendant or his counsel would normally and reasonably be expected to object to or respond to the prosecution's factual recital if the factual recital did not accurately reflect the circumstances of defendants' battery offense.  (*People v. Sample,*

9

*supra*, 200 Cal.App.4th at p. 1265.) The record of defendant's 2003 conviction indicates neither defendant nor his counsel "had any quibbles with the prosecution's recital. Accordingly, we conclude there is sufficient evidence to support an implied finding the prosecutor's recital" was an "adoptive admission and the trial court in this case properly considered the prosecution's recital in determining whether [defendant's] prior . . . conviction qualified as a prior strike conviction under California law." (*Ibid*.)

Defendant's contention lacks merit.

## V

In addition, defendant claims cumulative error warrants reversal. However, we reject this claim because there is no accumulated error. (*People v. Moore* (2016) 6 Cal.App.5th 73, 99.)

## VI

Defendant asks us to review the sealed transcripts from the trial court's *Pitchess* hearing. The People do not dispute that the fire investigator was a peace officer whose personnel records are subject to *Pitchess* discovery. (See *Johnson v. Lewis* (2004) 120 Cal.App.4th 443, 454-455 [Pen. Code, § 830.37 extends peace officer status to arson investigators].)

## A

On the day the fire investigator was to testify, the trial court and the parties discussed (out of the jury's presence) the possible existence of relevant impeachment evidence in the fire investigator's confidential personnel file. Defense counsel explained that, minutes earlier, some information came to his attention indicating that there were some character issues with the fire investigator regarding him being under the influence while conducting his work. The trial court denied defense counsel's request for a recess to research whether the prosecutor had known about such information. But the trial court indicated a *Pitchess* motion would be addressed in a timely manner. The fire investigator began testifying immediately after that discussion.

10

The next day, defendant filed a *Pitchess* motion, observing that the fire investigator "opined that the cause of the fire in this case is arson" and that "[i]nformation has come to light showing that there is relevant *Pitchess* information relating to [the fire investigator], including, but not limited to, performing job duties under the influence of alcohol." Defendant sought discovery of documents in the fire investigator's personnel records concerning "alleged acts involving moral turpitude," "being under the influence of alcohol while performing job duties," "improper handling of evidence," and "falsification of evidence or testimony." "[A]cts of moral turpitude or falsification of testimony or evidence, [went] to the character and credibility of [the fire investigator] as a witness and call[ed] into question his opinion," defendant argued.

The *Pitchess* hearing occurred several days after the fire investigator completed his testimony. After concluding that there was good cause to hold an in camera hearing, given the logical connection between the allegations of wrongdoing and the defense theory, the trial court closed the courtroom to all but an attorney for the fire district, the fire district's custodian of records, and necessary court staff.

After questioning the fire district's attorney and custodian of records, and reviewing documents they brought, the trial court determined that limited disclosure of an incident was warranted. In open court, the trial court announced that it had a chance to review the fire investigator's full personnel file, and the only thing the trial court found that was potentially relevant was an incident on August 1, 2013, almost five years prior to the fire in the instant case, in which the fire investigator responded to the scene of a fire and had been drinking.

B

*Pitchess*, *supra*, 11 Cal.3d 531, and its statutory scheme are based on the premise that evidence contained in a law enforcement fire investigator's personnel file may be relevant to a defendant's criminal defense and that to withhold such relevant evidence from the defendant would violate the right to a fair trial. (*People v. Mooc* (2001)

11

26 Cal.4th 1216, 1227.) *Pitchess* and Evidence Code sections 1043 through 1047 also recognize that the fire investigator in question has a strong privacy interest in the personnel records and that they should not be disclosed unnecessarily. (*Ibid*.) To balance these interests, a judge is authorized to examine the personnel records in camera and to disclose to the defendant only those records that are both relevant and in compliance with statutory limitations. (*Ibid.; People v. Gaines* (2009) 46 Cal.4th 172, 179.)

The record of the in camera hearing is sealed, and appellate counsel for the defendant and the People are not permitted to view it. (See *People v. Hughes* (2002) 27 Cal.4th 287, 330.) On request, an appellate court must independently review the sealed record to determine whether the trial court abused its discretion in ruling on the *Pitchess* motion. (*Ibid.*; *People v. Prince* (2007) 40 Cal.4th 1179, 1285.) An abuse of discretion in denying disclosure of confidential records pursuant to *Pitchess* requires reversal of the judgment if there is a reasonable probability that the outcome of the case would have been different had the information been disclosed to the defense. (*People v. Gaines, supra*, 46 Cal.4th at pp. 182-183.)

C

Having examined the materials presented to the trial court for in camera review, we find no abuse of discretion. A trial court shall not disclose information that is so remote "as to make disclosure of little or no practical benefit." (Evid. Code, § 1045, subd. (b)(2).) Here, the information in the fire investigator's personnel file is remote. Moreover, only records of past fire investigator misconduct similar to the misconduct alleged by the defendant in the pending litigation are relevant and subject to discovery. (*California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1021.) Here, there is no clear connection between the information in the personnel file and the articulated deficiencies of the fire investigator in this case. Accordingly, there is no reasonable probability that the outcome of this case would have been different had the information been disclosed to the defense.

## DISPOSITION

The judgment is affirmed.

_____/S/_____
MAURO, J.

We concur:

_____/S/_____
HULL, Acting P. J.

_____/S/_____
KRAUSE, J.