Filed 11/21/22  P. v. Ramos CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOEY MARTIN RAMOS,<br><br>    Defendant and Appellant. | D079800<br><br><br><br>(Super. Ct. No. SCN371166) |

APPEAL from a judgment of the Superior Court of San Diego County, Sim Von Kalinowski, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

In a prior appeal, we mostly affirmed a judgment against Joey Martin Ramos after he was convicted of 34 criminal offenses with strike priors and sentenced to a prison term of 500 years to life plus 146 years.  (*People v.*

*Ramos* (June 24, 2021, D075889) [nonpub. opn.].)  We rejected Ramos's sufficiency of evidence claims and found that his sentence did not constitute cruel and unusual punishment.  However, we remanded the matter to the trial court to:  (1) strike a one-year prison prior; (2) strike a misdemeanor conviction for which Ramos had received a concurrent sentence; and (3) hold a hearing on Ramos's ability to pay the fees and restitution fine.

On remand, after several continuances to allow defense counsel to communicate with Ramos and arrange for his presence by video, the court held a hearing at which Ramos appeared remotely by video from prison.  His defense attorney objected and argued that Ramos had a right to be physically present for the resentencing.  The court overruled the objection and struck the one-year prison prior and the misdemeanor conviction.  Rather than hold a hearing on Ramos's ability to pay the fees and restitution fine, the court struck them as well.  Ramos now appeals from the resentencing order, arguing that he was denied his rights to consult with his appointed counsel and to be present at a critical stage of the proceedings.

We conclude that the trial court committed error by compelling Ramos to appear remotely at the resentencing without his consent, but we find the error to be harmless under any standard of prejudice.  We also conclude that Ramos has failed to establish a violation of his Sixth Amendment right to counsel.  Accordingly, we affirm the trial court's judgment on resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

In a jury trial, Joey Martin Ramos was convicted of 34 criminal offenses committed in a crime spree that occurred over the course of five months between May and October 2016.  Many of the charges arose from a series of burglaries, petty thefts, and an attempted burglary.  Ramos then committed additional crimes as he attempted to flee from law enforcement, including

2

kidnapping a man and young child at gunpoint in a carjacking. Ramos also committed several crimes related to his unlawful possession of firearms and ammunition.

The trial court found that Ramos had incurred four prior strikes (Pen. Code, §§ 667, subds. (b)-(i), 668, 1170.12),[1] one prior serious felony (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and one prior prison term (former § 667.5, subd. (b)). The court sentenced him to an indeterminate sentence of 500 years to life, and a consecutive determinate sentence of 146 years. It also imposed fees and a restitution fine.

In a prior appeal, we affirmed the judgment, except that we remanded the matter to the trial court for three purposes: (1) to strike the one-year prison prior; (2) to strike Ramos's misdemeanor conviction in count 27 for having a concealed firearm on his person in violation of section 25400, subdivision (a)(2); and (3) to hold a hearing to consider his ability to pay the fees and restitution fine. We also directed the trial court to resentence Ramos and issue an amended abstract of judgment. We found that the trial court had properly denied Ramos's motion to strike some or all of his prior strikes and his prior serious felony, and we concluded that the resulting sentence did not constitute cruel and unusual punishment. (*People v. Ramos* (June 24, 2021, D075889) [nonpub. opn.].) After the Supreme Court denied review, the remittitur issued on September 3, 2021.

On October 18, 2021, the trial court held a hearing for the resentencing. Defense counsel Herb Weston appeared at the hearing remotely. He explained: "My client is not present at this time for this particular hearing" and "I haven't been able to contact my client since he's

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

3

been in the appellate process." Mr. Weston asked the court to "continue the matter so that I may at least try to contact my client at the prison system." The trial court agreed to continue the hearing until November 8, 2021. The court stated: "Mr. Weston, you indicated that you would make attempts to contact Mr. Ramos by phone and/or video at the prison prior to that, and then we'll go ahead and proceed at that time . . . ."

On November 8, 2021, the court held the continued hearing. Ramos was present for the hearing via Zoom, and attorney Tanya Weston made a special appearance for Ramos because Mr. Weston was ill and unable to attend even by video. The court inquired whether Mr. Weston had been able to talk to Ramos. Ms. Weston responded: "We have not, your Honor. We've tried to talk to him, and we have not been able to contact him." Ramos confirmed that he had not been able to talk to his attorney. The court then proposed to "put this out another month to see if we can have Mr. Weston be able to get in contact with Mr. Ramos." Ms. Weston agreed and said to Ramos: "Mr. Ramos, can you please give us a collect call so we can talk to you about what is going to happen in a month from court[?]" Ramos responded: "Yeah. I don't know -- yeah -- I will." The court continued the hearing again until December 13, 2021.

On December 13, 2021, the court convened again for the continued hearing. Mr. Weston appeared in person to represent Ramos, who was present by video from Calipatria State Prison. Ramos confirmed that he could hear the court proceedings, and the court was able to hear him. However, Mr. Weston objected to the proceeding as follows: "I'm objecting to the Court proceeding without my client being personally present in the courtroom. I have had no contact with my client except just briefly on an un-confidential phone. . . . My belief, he has a Constitutional right to be present

4

at what, basically, is a resentencing. . . . He has a right to have a competent attorney, which means going over what his rights are, which I have not been able to do and won't be able to do unless he's brought here and can be present so I can communicate with him." Mr. Weston stated, "we're objecting on all federal and state constitutional grounds because, number one, he's being deprived of his right to have a competent counsel; number two, that he -- my belief is even in this COVID time, he has a right to be present at a sentencing."

The trial court observed that "this is at least our third attempt at having this hearing and [we] have been unable to do so." The court also noted "that the Emergency Rules of Court 3 and 5 are still in place" and "there continues to be COVID in our institutions . . . ."[2] The court stated that "in essence, as far as the resentencing portion, I see that as an administerial function." The court explained that "but for the appellate court's direction to have a hearing on the fines and fees, I could have done that by minute order because I'm simply following what the appellate court has told me to do," i.e., strike the one-year prison prior and the conviction in count 27. The court stated: "The appellate court affirmed all the other sentencing decisions that were made. I'm not touching any of those." Accordingly, the court decided to proceed with the resentencing over defense counsel's objection.

The trial court struck the one-year prison prior and the concealed firearm conviction in count 27. As a result, the court reduced the determinate portion of Ramos's sentence from 146 years to 145 years. Rather

---

[2]    Emergency Rules 3 and 5 are part of the Emergency Rules Related to COVID-19 adopted by the Judicial Council and contained in Appendix I of the California Rules of Court. Emergency rules 3 and 5 (effective until June 30, 2022) authorized remote criminal proceedings, but only with the consent of the defendant. (Cal. Rules of Court, Appen. I, rules 3, 5.)

than hold a hearing on Ramos's ability to pay the fees and restitution fine, the court simply decided to strike them.  By doing so, the court explained that it was "giv[ing] [Ramos] the entire relief that he would be entitled to if he was to dispute this in any way . . . ."

Ramos now appeals from the resentencing order.

DISCUSSION

I

Ramos first argues that the trial court denied him his right to be present for the resentencing by compelling him to appear remotely without his consent.  We agree with the parties that a criminal defendant has a constitutional and statutory right to be present at critical stages of the proceedings, including sentencing and resentencing.  (*People v. Simms* (2018) 23 Cal.App.5th 987, 996.)  We also agree that the trial court committed error by compelling Ramos to participate in the resentencing hearing remotely without his consent.  However, we find the error to be harmless under either the *Watson* or *Chapman* standard of prejudice.  (*People v. Watson* (1956) 46 Cal.2d 818, 836–837 (*Watson*); *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).)

In *People v. Whitmore* (2022) 80 Cal.App.5th 116 (*Whitmore*), the trial court forced a criminal defendant to appear remotely from jail without his consent for post-trial hearings on a *Marsden* motion (*People v. Marsden* (1970) 2 Cal.3d 118), a motion for new trial, and sentencing.  These proceedings took place during a jail lockdown caused by a spike in COVID-19 cases.  (*Whitmore,* at pp. 123–124.)  Our colleagues in Division Three concluded that the trial court had committed state-law error by forcing the defendant to appear remotely without his consent, but not state or federal constitutional error.  (*Id.* at pp. 125–127.)

6

On the state-law question, the *Whitmore* court noted that sections 977, subdivision (b)(1) and 1193 both guarantee the defendant a right to be "personally present" at sentencing and "California courts have interpreted similar statutes as requiring a physical presence in the courtroom." (*Whitmore, supra,* 80 Cal.App.5th at p. 126 [citing cases].) Moreover, emergency rules 3 and 5 clearly require the defendant's consent to appear remotely, rather than in person. (Cal. Rules of Court, Appen. I, rules 3, 5.) Thus, the court concluded that the trial court had violated state law by compelling the defendant to participate in the hearings remotely without his consent.

The People concede that the trial court committed state-law error under *Whitmore,* and we accept the concession. However, we need not determine whether the error was also of constitutional dimension because we find that it would be harmless under either the *Watson* standard for state-law error or the *Chapman* standard for federal constitutional error. (*Watson, supra,* 46 Cal.2d at pp. 836–837 [defendant must demonstrate reasonable probability of a more favorable result for state-law errors]; *Chapman, supra,* 386 U.S. at p. 24 [prosecution bears burden of showing that federal constitutional error was harmless beyond a reasonable doubt].)

On remand, the trial court merely followed our directions by striking the prison prior and the misdemeanor conviction in count 27. As for the fees and fine, the trial court granted Ramos the maximum relief he could have achieved by striking them in their entirety. Moreover, there is no reasonable probability that the trial court would have chosen to revisit any of its *other* sentencing decisions if he had appeared in person for the resentencing, rather than remotely. "There is no indication in this record that [Ramos]'s physical presence in the courtroom would have benefited his case in any way or

7

otherwise altered the outcome . . . ." (*Whitmore, supra*, 80 Cal.App.5th at pp. 127–128.) Specifically, there is no reason to believe that Ramos's physical presence in the courtroom at resentencing would have caused the trial court to make discretionary sentencing decisions different from those it had already made when Ramos *was* physically present at the original sentencing. In these circumstances, the trial court's error would be harmless under either the *Watson* standard or the *Chapman* standard.

II

Next, Ramos argues that per se reversal is required because he was denied his Sixth Amendment right to consult confidentially with his counsel for the resentencing. He relies on *Geders v. United States* (1976) 425 U.S. 80 and other cases in which courts have found a Sixth Amendment violation without any showing of prejudice when counsel was prohibited or prevented from assisting the accused during a critical stage of the proceeding.

We reject this claim. In the first place, Ramos has failed to establish any interference with his right to consult confidentially with his attorney *before* the resentencing. At the request of the defense, the trial court twice continued the resentencing hearing for this very purpose. Although Ramos's counsel stated at the final hearing that he had only had brief contact with Ramos on a non-confidential phone call, nothing in the record suggests that he was prevented from setting up a confidential attorney-client phone call with Ramos or visiting him in prison. As Ramos appears to recognize in his reply brief, an attorney may request a confidential telephone call with a client who is a prison inmate. (Cal. Code Regs., tit. 15, § 3282, subds. (a)(2), (g).) Absent any explanation why defense counsel was unable to consult confidentially with Ramos during the three months before the final resentencing hearing, we cannot find any Sixth Amendment violation.

8

Second, the record also does not establish why Ramos could not consult confidentially with his attorney at or during a break in the resentencing hearing. The trial court expressly noted that COVID emergency rules 3 and 5 were still in effect. Emergency rule 5(e)(2) provided: "Where a defendant appears remotely, counsel may not be required to be personally present with the defendant for any portion of the criminal proceeding *provided that the audio and/or video conferencing system or other technology allows for private communication between the defendant and his or her counsel. Any private communication is confidential and privileged under Evidence Code section 952*." (Cal. Rules of Court, Appen. I, rule 5(e)(2), italics added.) Based on the presumption that official duties have been regularly performed (Evid. Code, § 664), and in the absence of any evidence to the contrary, we must presume that the video system used by the court did allow for private, confidential communication between Ramos and his counsel. On this record, therefore, we presume that defense counsel could have requested a recess to consult with Ramos confidentially before proceeding with the resentencing.

Finally, we note that the California Supreme Court has narrowly construed the *Geders* line of cases in which a Sixth Amendment violation may be established without any showing of prejudice. (*People v. Hernandez* (2012) 53 Cal.4th 1095, 1102–1105 (*Hernandez*).) As the court explained, "not all unwarranted interference with a client's ability to consult with counsel justifies a presumption of prejudice, requiring per se reversal." (*Id*. at p. 1111.) The court construed *Geders* as holding that the Sixth Amendment is violated without a showing of prejudice only "when the restriction on access to counsel was so profound as to create an inference that the defendant's attorney was unable to perform the essential functions of trial counsel." (*Id*. at p. 1109.) Otherwise, the defendant can establish a Sixth Amendment

violation "only by showing, in accordance with the standard stated in *Strickland* [*v. Washington* (1984) 466 U.S. 668, 686–687], that the trial court's order deprived him of effective assistance of counsel and there is a reasonable probability that, but for the error, the result . . . would have been different." (*Id*. at p. 1111.)

Other than the fact that Ramos was incarcerated in prison and special arrangements had to be made for a confidential attorney-client phone call, he has not demonstrated that there was any restriction on his access to counsel before the resentencing hearing, and on this record, the only proven restriction on his access to counsel during the hearing was that it was only available by video, rather than in person. Ramos's appointed defense counsel was present at the resentencing hearing; he was the same attorney who represented Ramos at the original trial and sentencing when Ramos *was* personally present; Ramos was present by video at the resentencing and presumptively available for consultation under emergency rule 5; and nothing prevented defense counsel from making whatever arguments may have been available to Ramos on resentencing. As a practical matter, the court and the parties seem to have recognized that the court would not be altering any of its original sentencing decisions other than those we required it to act on. We therefore conclude that "the circumstances present here do not render it so likely [Ramos] was deprived of the effective assistance of counsel as to entitle him to a presumption of prejudice . . . ." (*Hernandez, supra*, 53 Cal.4th at p. 1107.)

Ramos does not contend that he can establish a Sixth Amendment violation without the *Geders* presumption of prejudice. For the reasons we have discussed in connection with his physical presence claim, there is no reasonable probability that the result of the resentencing would have been

more favorable to Ramos if he could have had additional consultation with his appointed defense counsel in person or otherwise. As with the physical presence claim, there is no reason to believe that additional attorney-client consultation would have caused the trial court to make discretionary sentencing decisions different from those it had already made when Ramos *was* physically present and able to consult with his attorney in person at the original sentencing.

## DISPOSITION

The judgment on resentencing is affirmed.

BUCHANAN, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.

11